(Nos. 68500, 68501 cons.—

BRENDA HAYES, Adm'r of the Estate of Vincent Hayes, v. MERCY HOSPITAL AND MEDICAL CENTER *et al.* (The City of Chicago *et al.*, Appellants).

*Opinion filed July 3, 1990.*

RYAN, J., specially concurring.
CLARK, J., dissenting.
CALVO, J., joined by WARD and CLARK, JJ., also dissenting.

Kelly R. Welsh and Judson H. Miner, Corporation Counsel, of Chicago (Ruth M. Moscovitch and L. Anita Richardson, Assistant Corporation Counsel, of counsel), for appellant City of Chicago.

Fraterrigo, Best & Beranek, of Chicago (Fredrick J. Fraterrigo, Kevin G. Nedved and Keith G. Dronen, of counsel), for appellant Penn Trailers & Truck Bodies Corp. *et al.*

Wildman, Harrold, Allen & Dixon, of Chicago (John M. Stalmack and Ruth E. VanDemark, of counsel), for appellee Michael Jerva.

Liana A. Bizios, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE MILLER delivered the opinion of the court:

On October 28, 1986, the City of Chicago, Anthony Wilczak and Arnold Cisco (the City) filed a third-party complaint for contribution against Dr. Michael Jerva, alleging negligence in his treatment of the plaintiff in the

underlying action. Three days later, Penn Trailers Truck and Bodies Corporation and Irving Nuger (Penn Trailers), named defendants in the same underlying suit, also filed a third-party complaint for contribution against Dr. Jerva. Jerva thereafter filed a motion to dismiss the third-party complaints, which the trial court granted. The trial court found that because the third-party actions were filed more than four years after the alleged acts of negligence occurred, they were barred by the statute of repose contained in section 13—212(a) of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 13—212(a)). The City and Penn Trailers appealed, contending that an action for contribution is timely if it is filed during the pendency of the underlying direct action. The appellate court affirmed the trial court's dismissal of the third-party complaints. (180 Ill. App. 3d 441.) We allowed the City's and Penn Trailer's petitions for leave to appeal (107 Ill. 2d R. 315(a)), and consolidated the matters for oral argument and disposition. In addition, we granted the Illinois Trial Lawyers Association leave to submit a brief as *amicus curiae*.

On December 29, 1983, Vincent Hayes brought an action in the circuit court of Cook County against the City, Michael Jerva and Penn Trailers, among others, for injuries allegedly sustained by him on January 1, 1982, while he was being transported in a police "Squadrol" and while undergoing medical treatment for those injuries later that day. After filing the suit, Hayes died and Brenda Hayes, administrator of his estate, was substituted as plaintiff. On January 29, 1985, pursuant to the stipulation of Brenda Hayes and Michael Jerva (for reasons that do not appear in the record), the trial court dismissed Dr. Jerva from the cause with prejudice. On August 6, 1986, Brenda Hayes filed an amended complaint against the City and Penn Trailers, among others.

Dr. Jerva was not named a defendant in the amended complaint.

On October 28, 1986, the City filed a third-party complaint for contribution against Dr. Jerva (the defendant), alleging acts of negligence arising out of the defendant's treatment and care of Vincent Hayes on January 1, 1982. Penn Trailers also filed a third-party complaint for contribution against the defendant based on the same alleged acts of negligence. On September 25, 1987, Jerva filed a motion to dismiss the third-party complaints filed by the City and Penn Trailers. In his motion to dismiss the third-party complaints, the defendant alleged, among other things, that because the City's and Penn Trailer's third-party complaints were filed more than four years after the alleged acts of negligence occurred, the actions were barred by the statute of repose contained in section 13—212(a) of the Illinois Code of Civil Procedure (hereafter the medical malpractice statute of repose) (Ill. Rev. Stat. 1987, ch. 110, par. 13—212(a)). The provision provides in relevant part:

> "Except as provided in Section 13—215 of this Act, no action for damages for injury or death against any physician, dentist, registered nurse or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought *** more than four years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death."

Citing as authority the appellate court's decision in *Hartford Fire Insurance Co. v. Architectural Management, Inc.* (1987), 158 Ill. App. 3d 515, which held that a similar statute of repose for actions against certain persons for construction-related activities governed third-party actions for contribution, the trial court granted defendant's motion to dismiss the third-party complaints

on March 8, 1988. In addition, the trial court concluded that there was no just reason to delay the enforcement or appeal of the order pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)).

The City and Penn Trailers (the plaintiffs) appealed, contending that the medical malpractice statute of repose does not govern an action for contribution. Instead, the plaintiffs argued, an action for contribution is timely if it is filed during the pendency of the underlying direct action. The appellate court disagreed and affirmed the trial court's dismissal of the third-party complaints. The appellate court concluded that a plain reading of the disputed provision demonstrated that it applied to all medical malpractice actions against physicians regardless of the claim. The appellate court determined that "a contribution action is just a 'different way' of bringing an action *** for injury or death against a physician." (180 Ill. App. 3d at 444.) The appellate court then determined that the specific period of repose in the medical malpractice statute controlled over the general statute of limitations found in the Contribution Act. 180 Ill. App. 3d at 447.

The plaintiffs raise here their argument below that the four-year period of repose set forth in section 13—212 does not apply to contribution actions. In addition, the plaintiffs contend that even if the language in section 13—212 encompasses actions for contribution, the medical malpractice statute of repose is superseded by the rule, established by this court in *Laue v. Leifheit* (1984), 105 Ill. 2d 191, that an action for contribution can be brought anytime during the pendency of the underlying action.

The plaintiffs initially point to the condition in the statute of repose that "no action for damages for injury or death against any physician *** whether based upon tort, or breach of contract, or otherwise, arising out of

patient care" can be brought after the running of the repose period. (Ill. Rev. Stat. 1987, ch. 110, par. 13–212(a).) The plaintiffs argue that the phrase "action for damages" in the disputed provision refers only to an action at law for damages and not to an equitable apportionment of the damages among those who proximately caused the original plaintiff's injury. Therefore, the plaintiffs contend, the term "otherwise" in the provision relates only to various, but unenumerated, theories for recovery of damages for a plaintiff's injury or death. Citing this court's opinion in *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 14, the plaintiffs then submit that a contribution action is not an "action for damages" but is instead a separate and independent action in equity, designed to insure that all joint tortfeasors bear their fair share of the damages awarded in the underlying direct action.

Defendant counters that the term "action" in the disputed provision should be given its plain and ordinary meaning. Defendant offers an excerpt from Black's Law Dictionary defining the term to include "all the formal proceedings in a court of justice attendant upon the demand of a right made by one person of another in such court, including an adjudication upon the right and its enforcement or denial by the court." (Black's Law Dictionary 26 (5th ed. 1979).) Defendant then contends that the phrase "no action for damages" is met here because the plaintiffs' actions for contribution are for the recovery or credit of damages directly caused by defendant's alleged malpractice "arising out of patient care."

When interpreting a disputed provision, courts should ascertain and give effect to the true intent and meaning of the legislature, considering first the statutory language. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 277.) Unambiguous terms, when not specifically defined, must be given their plain and ordinary meaning. (See, *e.g.*, *People v. Moore* (1978), 69 Ill. 2d 520, 523.)

Moreover, courts should not insert words into legislative enactments when the statute otherwise presents a cogent and justifiable legislative scheme. (See *Hagen v. City of Rock Island* (1959), 18 Ill. 2d 174, 179.) A plain reading of the disputed provision leads us to conclude that the General Assembly did not intend to define an "action for damages" in the medical malpractice statute of repose as an "action at law for damages." We believe that the medical malpractice statute of repose bars any action after the period of repose seeking damages against a physician or other enumerated health-care provider for injury or death arising out of patient care, whether at law or in equity.

Because we find that the statute of repose is not limited to actions at law, we need not address the plaintiffs' argument that this court's decision in *Doyle v. Rhodes*, 101 Ill. 2d at 1, established the principle that an action for contribution is a suit in equity.

Nevertheless, we must still determine whether an "action for damages," as provided in the medical malpractice statute of repose, includes a third-party action for contribution or, as the plaintiffs contend, is limited to only a direct action by the injured party. The plaintiffs assert that their third-party actions against the defendant are not for recovery of the damages sustained by the original plaintiff, but instead are actions seeking the enforcement of an equitable duty to share liability among the parties responsible for the original plaintiff's injury in proportion to their relative fault. (See *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 14.) In support of their contention, the plaintiffs point out that an action for contribution can be based on a theory of recovery other than that asserted by a plaintiff in his direct action.

We believe that the plaintiffs' interpretation of the medical malpractice statute of repose unduly limits its scope and misapprehends the purpose behind its enact-

ment. It is true, as the plaintiffs observe, that an action for contribution need not be predicated on the same theory of recovery as that asserted by the plaintiff in the underlying action. (See, *e.g.*, *Hall v. Archer-Daniels-Midland Co.* (1988), 122 Ill. 2d 448, 450, 461; *J.I. Case Co. v. McCartin-McAuliffe Plumbing & Heating, Inc.* (1987), 118 Ill. 2d 447, 451-52, 462; *Doyle*, 101 Ill. 2d at 14.) Nevertheless, "the basis for a contributor's obligation rests on his liability in tort to the injured party" (*J.I. Case*, 118 Ill. 2d at 462), even if the plaintiff in the direct action did not assert the theory of liability on which the third-party action relies. The action for contribution apportions the damages among the parties responsible for the original plaintiff's injury, and the contributor is obligated for the damages directly created by the contributor's negligent actions. The third-party plaintiff, therefore, is seeking from the third-party defendant those damages proximately caused by the negligent acts of the third-party defendant which the third-party plaintiff may be obligated to pay in the underlying suit. This leads us to conclude that an action for contribution is an "action for damages" under the medical malpractice statute of repose.

The purpose behind the General Assembly's enactment of the medical malpractice statute of repose further supports our interpretation of the disputed provision. As previously discussed by this court (see, *e.g.*, *Anderson v. Wagner* (1979), 79 Ill. 2d 295), when the General Assembly limited the time period in which a party could bring a suit for medical malpractice, it was faced with what it perceived as a medical malpractice insurance crisis. "The crisis resulted from the increasing reluctance of insurance companies to write medical malpractice insurance policies and the dramatic rise in premiums demanded by those companies which continued to issue policies. The difficulty in obtaining insurance at

reasonable rates forced many health-care providers to curtail or cease to render their services. The legislative response to this crisis sought to reduce the cost of medical malpractice insurance and to insure its continued availability to the providers of health care." (*Anderson,* 79 Ill. 2d at 301.) The legislature therefore enacted, among other provisions, an outside time limit of five years, later amended to four, in which an action could be brought against physicians and hospitals for actions arising out of patient care (Pub. Act 79—960, eff. Nov. 11, 1975; Ill. Rev. Stat. 1975, ch. 83, par. 22.1). (*Mega v. Holy Cross Hospital* (1986), 111 Ill. 2d 416, 427.) This definite period in which an action could be filed was viewed as necessary to prevent extended exposure of physicians and other hospital personnel to potential liability for their care and treatment of patients, thereby increasing an insurance company's ability to predict future liabilities. (See *Anderson,* 79 Ill. 2d at 307.) This increased ability to predict liability was meant to assist in reducing health-care malpractice insurance premiums.

Because a suit for contribution against the insured for damages arising out of patient care exposes insurance companies to the same liability as if the patient were to have brought a direct action against the insured, we believe that the term "or otherwise" in the medical malpractice statute of repose includes actions for contribution against a physician for injuries arising out of patient care. We find wanting the plaintiffs' claim that the word "otherwise" does not include actions for contribution because such actions did not exist in Illinois until this court's 1978 decision in *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, three years after the General Assembly initially enacted the medical malpractice statute of repose. The inclusion of the term "or otherwise" following more restrictive language in the statute seems to us to indicate that the

legislature intended the term to be all-inclusive. We believe that the term demonstrates the General Assembly's desire at the time it originally enacted the statute to limit a physician's exposure to liability for damages for injury or death arising out of patient care under all theories of liability, whether then existing or not.

Plaintiffs next contend that the statute of limitations governing actions for contribution supersedes the medical malpractice statute of repose. *Amicus curiae*, citing the rule that a specific statutory provision relating to a specific subject prevails over a conflicting general provision (see *Sierra Club v. Kenney* (1981), 88 Ill. 2d 110, 126), asserts that section 13—204 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 13—204) governs the action here. Section 13—204 provides that "[n]o action for contribution among joint tortfeasors shall be commenced with respect to any payment made in excess of a party's pro rata share more than 2 years after the party seeking contribution has made such payment towards discharge of his or her liability."

We find *amicus curiae*'s reliance on section 13—204 of the Illinois Code of Civil Procedure misplaced. Section 5 of "An Act in relation to contribution among joint tortfeasors" (Ill. Rev. Stat. 1987, ch. 70, pars. 301 to 305) (Contribution Act), rather than section 13—204 of the Illinois Code of Civil Procedure, applies to actions for contribution when a direct action is pending. Section 5 states that "[a] cause of action for contribution among joint tortfeasors may be asserted by a separate action before or after payment, by counterclaim or by third-party complaint in a pending action." (Ill. Rev. Stat. 1987, ch. 70, par. 305.) In *Laue v. Leifheit* (1984), 105 Ill. 2d 191, this court held that a claim for contribution must be asserted, by counterclaim or third-party complaint, during the pendency of the underlying action, if one should exist. 105 Ill. 2d at 196.

The plaintiffs argue that the requirement stated in *Laue* was met here and that the *Laue* holding governs all actions for contribution, including actions for contribution arising from the contributor's medical malpractice. We do not believe that *Laue* is dispositive of the issue at bar. *Laue* only established a procedural requirement that actions for contribution must be filed during the pendency of the underlying direct action. (*Laue*, 105 Ill. 2d at 196.) The decision does not hold that all actions for contribution brought within the time an underlying suit is pending are timely filed. The medical malpractice statute of repose, on the other hand, "is intended to terminate the possibility of liability after a period of time." *Mega*, 111 Ill. 2d at 422.

Plaintiffs next argue that public policy precludes application of the medical malpractice statute of repose to actions for contribution. We disagree. Absent application of the medical malpractice statute of repose to actions for contribution, insurance companies would once again face an indefinite exposure to liability. Such a result would substantially thwart the legislative goal of reducing insurance premiums for health-care providers. *Cf. Stephens v. McBride* (1983), 97 Ill. 2d 515 (application of the notice provision in the Local Governmental and Governmental Employees Tort Immunity Act to a case for contribution "would be of questionable value").

Plaintiffs finally note that application of the repose period to actions for contribution effectively abolishes contribution actions in all cases where the underlying action is filed close to or on the last day of the four-year repose period. We are mindful of Dean Prosser's words, cited by this court in *Skinner*, 70 Ill. 2d at 13, that " '[t]here is obvious lack of sense and justice in a rule which permits the entire burden of a loss, for which two defendants were equally, unintentionally responsible, to be shouldered onto one alone, according to the accident

of a successful levy of execution, the existence of liability insurance, the plaintiff's whim or spite, or his collusion with the other wrongdoer, while the latter goes scot free.' Prosser, Torts sec. 50, at 307 (4th ed. 1971)." Nevertheless, the General Assembly perceived the medical malpractice insurance crisis as so grave that it limited to four years a patient's right to bring an action against certain health-care providers for damages arising out of patient care. For that reason, we find it difficult to believe that the General Assembly did not also intend to bar a culpable party's claim for contribution if not filed within the same statutory four-year period allowed an innocent plaintiff.

Because we believe that the City's and Penn Trailer's actions for contribution against Dr. Jerva were time-barred by the medical malpractice statute of repose, we affirm the appellate court's and trial court's judgments dismissing their third-party complaints.

*Judgments affirmed.*

JUSTICE RYAN, specially concurring:

It is apparent that my colleague, Justice Calvo, does not agree with the holding of this court in *Anderson v. Wagner* (1979), 79 Ill. 2d 295. As the author of the opinion in *Anderson*, which this court adopted without dissent, I wish to respond to some of the statements and observations made by my colleague in his dissent in this case. Therefore, I write this special concurrence.

First, I must respond to the statements that this court has "abdicated its role as protector of those unknowingly injured by medical malpractice" and that our holdings are intended to insure that "the physician can maintain a comfortable standard of living," or that "the insurance industry can maintain its profit margin," all at the expense of an injured person. (136 Ill. 2d at 473-74.) I find these statements inappropriate. In support of

these claims my colleague cites *Anderson*, in which we held constitutional the statute of repose in medical malpractice cases. *Anderson* was not an aberration in the law, adopted by a reactionary court interested only in assuring profit for physicians and insurance companies to the detriment of an injured person. Far from being an aberration, *Anderson* followed established precedent and was extensively researched. The many citations contained therein demonstrate that the statute under consideration in that case was consistent with statutes enacted in other States. (*Anderson*, 79 Ill. 2d at 308-10.) And, as stated in *Anderson*, "[a]ll of the cases that our research found have sustained the validity of the statute." *Anderson*, 79 Ill. 2d at 310.

Moreover, our role as State supreme court justices is not that of the protector of the unknowingly injured or any class of persons, nor do we have a special responsibility to insure that such plaintiffs recover in tort. We have a responsibility to interpret the law as it applies in the cases before us and to develop our common law, regardless of which party may prevail. This does not imply that we must treat plaintiffs more or less favorably than defendants, be they doctors, insurance companies or individuals. The legislature passed laws regarding medical malpractice lawsuits. We reviewed them in light of a constitutional challenge and upheld their validity. In doing so we were not, and indeed should not have been, influenced by the effect of our opinion on anyone's profit margin or standard of living.

My colleague's dissent is, essentially, divided into two parts. The first portion contends that this court has erred in applying the statute of repose found in section 13—212(a) of the Illinois Code of Civil Procedure (hereafter the medical malpractice statute of repose) to an action brought against a doctor under the Contribution Act. (136 Ill. 2d at 473-74.) The analysis points out per-

ceived errors in reasoning and asserts what Justice Calvo believes to be the proper interpretation of the statute involved. This is the intended purpose of dissent, and it is an important aspect of this court's decision-making function. However, in this case, the majority of the court has concluded, for the reasons stated in the opinion, that the statute of repose does apply in this situation and I agree with that interpretation. The bulk of the dissent, however, then goes on to address an issue not raised in the case, namely, that the medical malpractice statute of repose contained in the Illinois Code of Civil Procedure and, presumably, any other statute of repose, is unconstitutional. (136 Ill. 2d at 475-76.) This is, in reality, a dissent to *Anderson*.

I specially concur because I believe that *Anderson* was properly decided, that my colleague's interpretations of the appropriate standard of review and of our constitutional provisions are incorrect, and that the cases relied upon by my colleague from other jurisdictions are the minority view and are clearly distinguishable. Justice Calvo cites cases from eight States which have declared statutes of repose in medical malpractice statutes unconstitutional, and cases from eight other States which have declared statutes of repose in products liability or architects and builders statutes unconstitutional. Although he notes that his list is not all-inclusive, he contends that the trend in the United States is to declare such statutes unconstitutional. I do not agree that any such trend exists. In *Anderson*, we stated that up until that time, all the jurisdictions had sustained the validity of the statutes. (*Anderson*, 79 Ill. 2d at 310.) Since that time, the great majority of the case law still has held these statutes constitutional. Cases on the issue affirming the constitutionality of statutes of repose in medical malpractice actions, other than those cited in *Anderson*, include: *Bowlin Horn v. Citizens Hospital* (Ala. 1983), 425 So.

2d 1065 (medical malpractice statute does not violate equal protection); *Dunn v. St. Francis Hospital, Inc.* (Del. 1979), 401 A.2d 77 (medical malpractice statute does not violate open courts provision); *Holmes v. Iwasa* (1983), 104 Idaho 179, 657 P.2d 476 (statute does not violate Federal equal protection or due process); *Johnson v. St. Vincent Hospital, Inc.* (1980), 273 Ind. 374, 404 N.E.2d 585 (statute does not violate State or Federal due process or equal protection); *Koppes v. Pearson* (Iowa 1986), 384 N.W.2d 381 (does not violate State or Federal equal protection); *Stephens v. Snyder Clinic Association* (1981), 230 Kan. 115, 631 P.2d 222 (does not violate State or Federal equal protection); *Valentine v. Thomas* (La. App. 1983), 433 So. 2d 289 (statute does not violate State equal protection, due process, or open courts); *Hill v. Fitzgerald* (1985), 304 Md. 689, 501 A.2d 27 (does not violate open courts); *Ross v. Kansas City General Hospital & Medical Center* (Mo. 1980), 608 S.W.2d 397 (does not violate State or Federal due process or equal protection); *Colton v. Dewey* (1982), 212 Neb. 126, 321 N.W.2d 913 (does not violate State due process or open courts or Federal equal protection); *Armijo v. Tandysh* (App. 1981), 98 N.M. 181, 646 P.2d 1245 (does not violate Federal equal protection or due process); *Smith v. Smith* (1987), 291 S.C. 420, 354 S.E.2d 36 (State or Federal equal protection is not violated); *Allen v. Intermountain Health Care, Inc.* (Utah 1981), 635 P.2d 30 (does not violate State equal protection). For a list of 23 other jurisdictions which have held either products liability statutes of repose or repose statutes concerning the construction industry constitutional, see Note, *The Constitutionality of Statutes of Repose: Federalism Reigns*, 38 Vand. L. Rev. 627, 657-64 (1985), and Note, *Repose vs. Right-To-A-Remedy: Physician vs. Patient Under the Ohio Constitution*, 57 U. Cin. L. Rev. 423, 443 n.145 (1988). Merely listing these cases is insuf-

ficient persuasion on this issue; rather, it is the legal reasoning that is determinative, and I believe that my colleague's legal reasoning is flawed.

Analysis of a challenge to legislation as violative of either State or Federal due process or equal protection involves classifying the interest involved, and applying either a strict scrutiny, an intermediate level, or a rational basis review. Under the Federal Constitution, strict scrutiny applies when the legislation affects a fundamental right, such as the right to vote (*Kramer v. Union Free School District No. 15* (1969), 395 U.S. 621, 23 L. Ed. 2d 583, 89 S. Ct. 1886), or if a suspect class is involved (see *Graham v. Richardson* (1971), 403 U.S. 365, 29 L. Ed. 2d 534, 91 S. Ct. 1848 (alienage); *Loving v. Virginia* (1967), 388 U.S. 1, 18 L. Ed. 2d 1010, 87 S. Ct. 1817 (race)). Intermediate scrutiny applies if legislation distinguishes on the basis of illegitimacy or gender. (See *Mississippi University for Women v. Hogan* (1982), 458 U.S. 718, 73 L. Ed. 2d 1090, 102 S. Ct. 3331.) The rational basis test is applied to economic and social welfare legislation not affecting a suspect class or a fundamental right. See *Barwick v. Celotex Corp.* (4th Cir. 1984), 736 F.2d 946, 958.

The legislation in question concerns an injured person's right to recover damages for bodily injury. This is an economic right, and thus the rational basis test should apply. Certainly, under the Federal due process and equal protection clauses, the statute involved would be reviewed utilizing the rational basis test and would withstand a constitutional challenge. (See Turkington, *Constitutional Limitations on Tort Reform: Have the State Courts Placed Insurmountable Obstacles in the Path of Legislative Responses to the Perceived Liability Insurance Crisis?*, 32 Vill. L. Rev. 1299, 1310-13 (1987); Note, *The Unconstitutionality of Medical Malpractice Statutes of Repose: Judicial Conscience Versus Legislative Will,*

34 Vill. L. Rev. 397, 407-09 (1989) ("as long as the rational basis test is the standard of judicial review for medical malpractice statutes of repose challenged under the due process and equal protection clauses of the fourteenth amendment, it is unlikely that the statutes will be found violative of the United States Constitution").) Of the various types of statutes of repose, nearly every court which has applied a rational basis test to the constitutional challenge has held them constitutional. (See Note, *The Constitutionality of Statutes of Repose: Federalism Reigns*, 38 Vand. L. Rev. 627, 635-44 (1985).) We have construed provisions of our constitution consistent with Federal interpretations when similar provisions using similar language are found in the Federal Constitution. (*People v. Tisler* (1984), 103 Ill. 2d 226, 242-45; *People v. Jackson* (1961), 22 Ill. 2d 382, 387.) Our due process and equal protection provisions are similar to those found in the Federal Constitution. (See Ill. Const. 1970, art. I, §2, Constitutional Commentary, at 109 (Smith-Hurd 1971).) Therefore, in *Anderson*, we applied a rational basis test and, consistent with a Federal interpretation of the issue and other States' analysis, we held that the statute of repose did not violate due process or equal protection rights.

My colleague, however, contends that we have abdicated our constitutional responsibility by giving deference to the will of the legislature on this issue. In the mid-1970s a perceived medical malpractice insurance crisis spurred legislatures throughout the country to enact numerous laws in hopes of curtailing rising insurance costs and insuring the availability of health care services. The legislation involved in *Anderson* was enacted in response to this crisis, and, as mentioned, we reviewed it under a rational basis standard. In reviewing the constitutionality of the legislation involved under the rational basis standard, we gave deference to findings of the leg-

islature. We, therefore, deferred to the findings that there was a crisis necessitating legislation. Justice Calvo contends now that there was no medical insurance crisis and he cites empirical studies which enforce his claim that statutes of repose have negligible effect on insurance premiums. However, in cases such as this, States are not required to convince the courts of the correctness of their legislative judgments in light of empirical evidence regarding effectiveness of legislation. (*Minnesota v. Clover Leaf Creamery Co.* (1981), 449 U.S. 456, 463-64, 66 L. Ed. 2d 659, 668-69, 101 S. Ct. 715, 723-24.) Moreover, since the enactment of the laws involved in *Anderson*, the legislature has twice amended the statutes and has not disturbed the provision relating to statutes of repose. The legislature must also be aware of the claims of Justice Calvo regarding the effectiveness of the statute of repose; nevertheless, it has been maintained in the act. This is a public policy decision which is appropriate for the legislature. Therefore, I cannot agree that our review of the issue was improper, even in light of the statements of my colleague. Nor can I agree with the conclusion that in *Anderson* and other cases this court has blithely ignored its responsibility in the face of legislative enactments. We have, on numerous occasions in the past, declared legislation unconstitutional when, after reviewing it under the appropriate standards, we determined that it did not survive a challenge to either the Illinois or the United States Constitution. The legislation may not have been wise or the most effective way to deal with the problem, but it was within the legislature's power to enact.

The dissent relies extensively on *Kenyon v. Hammer* (1984), 142 Ariz. 69, 688 P.2d 961, for what it believes is the appropriate analysis of the issue. (136 Ill. 2d at 485-86.) *Kenyon* is an aberration from the holding of other courts addressing statutes of repose because it found

that there was a fundamental right involved and applied a strict scrutiny analysis. The court found a fundamental right based on three provisions within the Arizona State Constitution. First, the open courts provision prohibited abrogation of " 'the right of action to recover damages' " and required that " 'the amount recovered shall not be subject to any statutory limitation.' " (*Kenyon*, 142 Ariz. at 79, 688 P.2d at 971, quoting Ariz. Const. art. 18, §6.) Second, the equal protection clause of that State provides: "No law shall be enacted granting to any citizen, class of citizens *** privileges or immunities which, upon the same terms, shall not equally belong to all citizens ***." (*Kenyon*, 142 Ariz. at 77, 688 P.2d at 969, citing Ariz. Const. art. 2, §13.) Third, that State's Constitution provides that "[n]o law shall be enacted in this state limiting the amount of damages to be recovered for causing the death or injury of any person." (*Kenyon*, 142 Ariz. at 79, 688 P.2d at 971, citing Ariz. Const. art. 2, §31.) From these the court concluded that in Arizona there is a fundamental right to recover damages for bodily injury. Our constitution does not contain this language, nor is there an indication from our constitution or case law that a fundamental right is involved. The analysis involved in *Kenyon* is also not persuasive under a rational basis review of the statute. Under a strict scrutiny analysis, a statute which impinges on a fundamental right is presumed unconstitutional; however, this presumption does not attach under a rational basis test. Moreover, *Kenyon* relied on statistical analysis of the effect of statutes of repose. As mentioned, this is not appropriate in a rational basis test. There was a legislative determination that statutes of repose should be applied in medical malpractice cases, as well as other cases, and it is enough, under the standard of review, that the legislature reasonably perceived the existence of an insurance crisis and that statutes of repose are an effective response.

Also, besides responding to the increasing insurance premiums, these statutes serve the additional purposes of preventing the assertion of stale claims and protecting defendants from uncertain and protracted liability.

I thus do not find *Kenyon* persuasive on the issue. For similar reasons the cases from New Hampshire and North Dakota, which relied on a heightened standard of review, do not compel the conclusion that *Anderson* was wrongly decided. However, the Ohio Supreme Court, in *Gaines v. Preterm-Cleveland, Inc.* (1987), 33 Ohio St. 3d 54, 514 N.E.2d 709, did hold unconstitutional the statute of repose utilizing a rational basis test. This is, apparently, the only case which has done so using this test. The precedent leading up to *Gaines*, though, does distinguish that case. Prior to *Gaines*, the Ohio court had held that the statute of repose would not apply retroactively to malpractice cases where the injury arose prior to the effective date of the statute, but which was not discovered until four years after the act or occurrence constituting the alleged malpractice. (*Deskins v. Young* (1986), 26 Ohio St. 3d 8, 496 N.E.2d 897.) Also, in *Mominee v. Scherbarth* (1986), 28 Ohio St. 3d 270, 503 N.E.2d 717, the court held the statute unconstitutional with respect to minors. Last, as applied to persons who did not know or could not reasonably have known of their injuries, the court held the statute violated the right-to-a-remedy provision of the Ohio Constitution. (*Hardy v. VerMeulen* (1987), 32 Ohio St. 3d 45, 512 N.E.2d 626.) Therefore, in light of its previous holdings which had considerably watered down the effectiveness of the provision, it was not a wide leap for the Ohio court to determine the statute was also violative of equal protection and due process.

Other courts have found statutes of repose violative of their State's certain remedy, open courts or right-to-a-remedy provision. This provision allows the court to invalidate the provision with no balancing test, as is re-

quired in an equal protection or due process issue, because, as my colleague states, the statute "either denies the right [to a certain remedy] or it does not." 136 Ill. 2d at 494.

*Mega v. Holy Cross Hospital* (1986), 111 Ill. 2d 416, 423-25, articulated this court's interpretation of the certain remedy provision found in our 1970 Constitution (Ill. Const. 1970, art. I, §12) and its predecessor, the 1870 Constitution (Ill. Const. 1870, art. II, §19). That provision has been interpreted as an expression of a philosophy, but it does not mandate that every injury must be compensated or that restrictions on the requirements necessary for recovery may not be imposed. In *Mega*, we concluded that the philosophy expressed in the provision may be tempered by the legislature's choice of a period of repose. My colleague's interpretation of the provision is wholly at odds with this court's precedent, and I am unconvinced by his reasoning that repose clauses are unconstitutional.

Thus, I conclude that my colleague's attack on the statute of repose is not well taken. It is not supported by the weight of authority in this country. The cases from other jurisdictions, relied on by my colleague, are distinguishable. Most of them are based on the right-to-remedy provisions of the constitutions of those States, whereas the right-to-remedy of our constitution has always been held not to confer a right, but to be aspirational. *Anderson* was properly decided at the time of the adoption of that opinion, and considering the cases which have held to the contrary since *Anderson*, the above analysis discloses that the decision in *Anderson* is still sound. For this court to reach a decision contrary to *Anderson*, it would be necessary to overrule a substantial body of the law of this State involving several different areas. I have written this concurrence so that the

dissent of my colleague may be viewed in light of the above analysis.

JUSTICE CLARK, dissenting:

I join in Justice Calvo's dissent and write separately only to emphasize that the majority's interpretation of the medical malpractice statute of repose runs afoul of the "certain remedy" provision of the Illinois Constitution.

As Justice Calvo persuasively demonstrates, the majority incorrectly interprets the phrase "action for damages" contained in the statute of repose as encompassing actions for contribution. However, assuming that the majority is correct, and contribution actions are indeed "actions for damages," then section 12 of article I of the Illinois Constitution (Ill. Const. 1970, art. I, §12) guarantees that persons entitled to such damages (*i.e.*, persons entitled to contribution) "shall find a certain remedy in the laws." Like Justice Calvo, I have long viewed the "certain remedy" provision of our constitution as creating a substantive right to "a certain remedy in the laws," rather than as constituting a mere " 'expression of philosophy' " (*Mega v. Holy Cross Hospital* (1986), 111 Ill. 2d 416, 424, quoting *Sullivan v. Midlothian Park District* (1972), 51 Ill. 2d 274, 277). (See *Mega*, 111 Ill. 2d at 434 (Clark, C.J, dissenting) ("our constitution clearly directs that the courts of this State. shall be open to the injured").) I therefore believe that under our constitution, if an action for contribution is an action for damages, then the General Assembly cannot deprive persons entitled to contribution of their opportunity to "obtain justice by law, freely, completely, and promptly" (Ill. Const. 1970, art. I, §12). Nevertheless, that is precisely the result which will occur if the medical malpractice statute of repose is applied to actions for contribution.

The majority's interpretation of the statute of repose in this case effectively precludes contribution actions in all medical malpractice cases where a plaintiff files his or her complaint on or near the last day of the four-year repose period. In such cases, the defendant, who may not have been aware of the injury until receiving notice of the complaint, will be unable to file a third-party action for contribution against other joint tortfeasors before the expiration of the period of repose. Under the majority's holding, the defendant would have lost his or her right to bring a contribution action only because the plaintiff exercised his or her right to file a complaint on the last possible day. Such a result is not only inequitable, it is also unconstitutional.

A majority of this court held in *Mega v. Holy Cross Hospital* (1986), 111 Ill. 2d 416, 428-29, that the medical malpractice statute of repose was constitutional even though it precluded recovery for plaintiffs injured before the effective date of the statute. In dissenting to the majority's opinion in that case, I stated that "[l]ocking the courtroom door on this group of plaintiffs before they could even have discovered their injuries or availed themselves of the judicial process is unconstitutional in Illinois." (*Mega*, 111 Ill. 2d at 431 (Clark, C.J., dissenting).) I believe that the majority's interpretation of the statute of repose in this case similarly renders the statute unconstitutional because the majority's interpretation locks the courtroom door on certain persons who are entitled to contribution "before they could even have discovered their injuries or availed themselves of the judicial process." *Mega*, 111 Ill. 2d at 431 (Clark, C.J., dissenting).

This court has stated that "[a] statute should be interpreted so as to avoid a construction which would raise doubts as to its validity." (*People v. Davis* (1982), 93 Ill. 2d 155, 161.) Consequently, where there are "two possi-

ble constructions of a statute, one rendering it as constitutional, and the other as unconstitutional, this court will favor the construction rendering it constitutional." (*Mulligan v. Joliet Regional Port District* (1988), 123 Ill. 2d 303, 312.) As Justice Calvo points out, the phrase "action for damages" in the medical malpractice statute of repose need not (and in fact should not) be read as encompassing actions for contribution. Such a construction would avoid raising questions as to the statute's constitutionality and therefore should be adopted. However, assuming that the only reasonable reading of the statute is that the General Assembly did indeed intend that actions for contribution be subject to the period of repose, the statute should be declared unconstitutional.

For these reasons, I would reverse the judgment of the appellate court which affirmed the trial court's dismissal of the third-party complaint. I therefore dissent.

JUSTICE CALVO, also dissenting:

As is often the case in law, when a result seems unfair, the reasoning underlying the opinion is flawed. Although the majority recognizes the injustice perpetrated by its decision, it blithely attributes responsibility to the legislature. This approach is, if nothing else, consistent with precedent. (See *Anderson v. Wagner* (1979), 79 Ill. 2d 295, 312 ("Although such a result—a cause of action barred before its discovery—seems harsh and unfair, the reasonableness of the statute must be judged in light of the circumstances confronting the legislature and the end which it sought to accomplish").) Since this court long ago abdicated its role as protector of those unknowingly injured by medical malpractice (compare *Lipsey v. Michael Reese Hospital* (1970), 46 Ill. 2d 32, 40-41 (applying discovery rule to medical malpractice), with *Anderson*, 79 Ill. 2d at 312 (abandoning full application of the rule in deference to the legislature)), I would not

expect the court to grant relief to a defendant who may be forced to pay for a physician's negligence, as well as his own, while the physician goes scot-free. After all, when we require other segments of society to pay for a physician's negligence we are furthering the legislature's goal: securing "the continuation of health services" (*Anderson*, 79 Ill. 2d at 317) by holding down medical liability insurance premiums. When an injured patient, or a physician's codefendant, is forced to pay for a physician's negligence, the physician can maintain a comfortable standard of living, the insurance industry can maintain its profit margin, and the rest of us, theoretically, can have access to affordable health care.

As a means to those ends, the legislature has seen fit to enact the medical malpractice statute of repose, which leaves without a remedy a victim of medical malpractice who could not have discovered his injury within the four-year limitation period. By denying a remedy to those few who cannot discover their injuries within the four-year period, the legislature has, in some small way, secured affordable health care for us all. In *Anderson*, this court deferred to the legislature and held the legislature's action constitutional.

Unfortunately, deference to the legislature has become so engrained in this court's psyche that the court is now applying the four-year limitation period to situations beyond the purview of the statute involved, quoting, but then ignoring, the wise words of Dean Prosser which this court cited when it abolished the "no-contribution rule" in Illinois:

> " 'There is obvious lack of sense and justice in a rule which permits the entire burden of a loss, for which two defendants were equally, unintentionally responsible, to be shouldered onto one alone, according to the accident of a successful levy of execution, the existence of liability insurance, the plaintiff's whim or spite, or his collusion

with the other wrongdoer, while the latter goes scot free.' Prosser, Torts sec. 50, at 307 (4th ed. 1971)." (*Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 13.)

The language employed in this statute of repose does not require this court to ignore "sense and justice" and deny the City and Penn Trailers the right to bring an action for contribution. To say that the legislature intended such a result is to indulge in unbridled speculation. It may well be that barring an action for contribution is *consistent* with what the legislature was attempting to accomplish (rightly or wrongly) when it enacted the statute; however, there is nothing to indicate the legislature actually *intended* to bar contribution as a means to that end. It would have been consistent for the legislature to have extended the medical malpractice statute of repose to cover all health care providers (*Anderson*, 79 Ill. 2d at 320); however, it stopped short of that measure. It seems to me that this court acts as a superlegislature when it puts words in the legislators' mouths.

In any event, even if the legislature *did* intend to limit the availability of an action for contribution, for the reasons which appear in the latter part of this discussion I believe the four-year limitation period in the medical malpractice statute of repose is unconstitutional when applied to one who could not have timely discovered his right to sue, and I am loath to apply it in this or any other context.

Section 13—212(a) of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 13—212(a)) provides as follows:

"Except as provided in Section 13—215 of this Act [fraudulent concealment], no action for damages for injury or death against any physician, dentist, registered nurse or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or

otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of such date occurs first, but in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death."

The parties dispute the meaning of the statutory terms "action for damages" and "otherwise." The majority, employing an uncanny ability to divine legislative intent, holds that these terms subsume an action for contribution. I cannot agree.

As with any statutory provision, the best indication of the intent of the drafters is the language which they voted to adopt. (*Coryn v. City of Moline* (1978), 71 Ill. 2d 194, 200.) A statutory term which is not defined must be given its ordinary and popularly understood meaning. (*People v. Hicks* (1984), 101 Ill. 2d 366, 371.) The Restatement, which furnishes scholarly and comprehensive treatment of the "general law of the United States," defines "damages" in a tort context as "a sum of money awarded to a person injured by the tort of another." (Restatement (Second) of Torts §902 (1979).) This definition is echoed in a leading law dictionary. (Black's Law Dictionary 352 (5th ed. 1979).) The term is further defined, generally, as "an award made to a person by a competent judicial tribunal in a proceeding at law or in equity because of a legal wrong done to him by another." (Restatement (Second) of Torts §902, comment *a* (1979).) An action for contribution cannot qualify as an "action for damages" under these definitions because, even in the broadest sense, no "legal wrong" has been inflicted upon the party seeking contribution by the party from whom he seeks contribution. Specifically, the party seeking con-

tribution has not been "injured by the tort of another." The two parties have a similar relationship to the injured plaintiff, but otherwise need not be related to one another. To rely upon the "purpose" behind an enactment—as the majority does—in interpreting an ambiguous term is undeniably appropriate; however, the term in question must be capable of the interpretation ultimately placed upon it. I do not believe an "action for contribution" is congruous with the term "action for damages" as the latter is commonly understood.

Moreover, the term "otherwise," as used in the statute, should not be interpreted so as to subsume an action for contribution. The aid to statutory construction which logically applies herein is *noscitur a sociis*, that a word is or may be known from the accompanying words. The meaning of questionable words or phrases in a statute may be ascertained by reference to the meaning of words or phrases associated with it. (Black's Law Dictionary 956 (5th ed. 1979).) The maxim, while not an inescapable rule, is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to a legislative act. (*Jarecki v. G.D. Searle & Co.* (1961), 367 U.S. 303, 307, 6 L. Ed. 2d 859, 863, 81 S. Ct. 1579, 1582.) The statute of repose provides that "no action for damages for injury or death against any physician *** whether *based upon tort, or breach of contract, or otherwise,* arising out of patient care" can be brought after the running of the repose period. (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 110, par. 13—212(a).) To begin with, the emphasized terms modify the term "action for damages." Since I believe an "action for damages" does not subsume an action for contribution, I also believe that the emphasized terms, enumerating the theories upon which an action for damages can be based, do not include an action for contribution. Moreover, applying the maxim, the terms preceding

"otherwise" appear to be theories upon which a *malpractice claimant* could premise his suit against a physician. It would seem to follow that "otherwise" refers to other theories upon which an action for damages can be based, beyond the traditional contract and tort theories.

The court's disposition here is, in essence, in accord with the decision of the appellate court in *Hartford Fire Insurance Co. v. Architectural Management, Inc.* (1987), 158 Ill. App. 3d 515. This court refers to *Hartford* in the majority opinion and both the trial and appellate courts relied upon *Hartford*. At issue in *Hartford* was the proper interpretation of another statute of repose (construction) which, like the medical malpractice statute of repose, allowed limited use of the discovery rule, but nonetheless set an outer limit for the bringing of an action. As in this case, the specific question in *Hartford* was whether an action for contribution could be maintained despite the statute's proscription. The statute, section 13—214 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 13—214), provides in pertinent part:

> "(a) Actions based upon tort, contract or otherwise against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property shall be commenced within 2 years from the time the person bringing an action, * * * knew or should reasonably have known of such act or omission.
>
> (b) No action based upon tort, contract or otherwise may be brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property after 12 years have elapsed from the time of such act or omission. However, any person who discovers such act or omission prior to expiration of 12 years from the time of such act or omis-

sion shall in no event have less than 2 years to bring an action as provided in subsection (a)."

The appellate court in *Hartford* concluded that the use of the terms "no action" and "otherwise" precluded an action for contribution.

Obviously, the statute construed in *Hartford* differs from the medical malpractice statute of repose in that "no action" was utilized there, whereas "no action for damages" was employed in the medical malpractice context. I believe the use of different terminology in similar statutes warrants a different result in this case. Beyond this distinction, however, I question the *Hartford* decision. An antecedent version of the same statute at issue in *Hartford* (see Ill. Rev. Stat. 1965, ch. 83, par. 24(f)) *specifically* precluded "any action for contribution or indemnity." The legislature included this language despite the fact that contribution was not allowed in Illinois at that time. In subsequent versions of the statute the legislature saw fit to *remove* the quoted language despite this court's decision in *Skinner* and the legislature's enactment of the Contribution Act in 1979 (Ill. Rev. Stat. 1979, ch. 70, par. 301 *et seq.*). If the legislature intended the construction statute of repose to apply to contribution actions, I find it odd, at the very least, that it deleted language which would have made that intent clear. There is a presumption, albeit rebuttable, that when the legislature amends an act by deleting certain language therefrom, it intends to change the law in that respect. *People v. Youngbey* (1980), 82 Ill. 2d 556, 563.

The legislature has, in the past, used language which clearly barred an action for contribution in the context of a similar statute of repose. Without such a clear expression of intent, I would not find it meant to do so here. A clear expression of intent was required in *Stephens v. McBride* (1983), 97 Ill. 2d 515, 521-22, when this court held that the notice provisions of the Local

Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1979, ch. 85, pars. 8—101, 8—102, 8—103) do not apply to an action for contribution, noting that the doctrine of contribution was not recognized in Illinois until *after* enactment of the Act, and that the Act did not purport to deal with contribution actions. The same observations can be made here. The intent of the contribution statute, which the majority more or less ignores, is to reach anyone who is culpable regardless of whether he has been immunized from a direct tort action by some special defense or privilege. (*Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 9.) The statutory requirement that the negligent party must be "subject to liability in tort" is determined at the time of the injury out of which the right to contribution arises, not at the time the action is brought. (*Doyle*, 101 Ill. 2d at 10-11.) Simply put, I do not believe the medical malpractice statute of repose requires the barring of an action for contribution.

Beyond that, I view the contribution issue as subsidiary to the constitutional infirmity occasioned by the four-year limitation period in the medical malpractice statute of repose. I realize that the establishment of an outer limit for bringing a medical malpractice action was held constitutional in *Anderson*, even though this court in *Wright v. Central Du Page Hospital Association* (1976), 63 Ill. 2d 313, struck down related legislation which would have limited the amount a plaintiff could recover in a medical malpractice action—the result being that the fortunate plaintiff who timely discovers his right to sue is afforded unlimited recovery, while the unfortunate plaintiff who cannot timely discover his right to sue has no remedy at all. In my opinion, this court in *Anderson* was influenced too much by what it perceived as the judicial trend toward upholding medical malpractice statutes of repose enacted in response to the "perceived"

medical malpractice crisis. (*Anderson*, 79 Ill. 2d at 308-12, 316.) The problem with following trends is that they do not last and, in many cases, derive from the exaltation of popular sentiment over reason.

It now appears that the trend of the 1970s may well have been a wave of hysteria unwarranted by what an increasing number of courts and commentators feel was an "illusory" or "perceived" crisis, the result of intense lobbying pressure by insurance and medical groups. (*Kenyon v. Hammer* (1984), 142 Ariz. 69, 73, 688 P.2d 961, 964; *Hardy v. VerMeulen* (1987), 32 Ohio St. 45, 48, 512 N.E.2d 626, 629; Note, *The Unconstitutionality of Medical Malpractice Statutes of Repose: Judicial Conscience Versus Legislative Will*, 34 Vill. L. Rev. 397, 415 (1989); D. Louisell & H. Williams, Medical Malpractice §20.07, n.55 (Supp. 1979); Aitken, *Medical Malpractice: The Alleged "Crisis" in Perspective*, Ins. L.J. 90, 96 (1976); Turkington, *Constitutional Limitations on Tort Reform: Have the State Courts Placed Insurmountable Obstacles in the Path of Legislative Responses to the Perceived Liability Insurance Crisis?*, 32 Vill. L. Rev. 1299, 1299-1300 (1987) (congressional reports and other forums questioned the *bona fide* nature of the supposed "crisis"); Learner, *Restrictive Medical Malpractice Compensation Schemes: A Constitutional "Quid Pro Quo" Analysis to Safeguard Individual Liberties*, 18 Harv. J. on Legis. 143, 144 (1981).) Even among those who believe there was a crisis (Redish, *Legislative Response to the Medical Malpractice Insurance Crisis: Constitutional Implications*, 55 Tex. L. Rev. 759 (1977); McKay, *Rethinking the Tort Liability System: A Report From the ABA Commission*, 32 Vill. L. Rev. 1219, 1221 (1987)), there are those who believe that the origin of the crisis is not solely attributable to rising payments on medical malpractice claims and, in any event, the legislation enacted in response to the crisis was, for the most

part, "ill-conceived, or at least did not perform as intended." McKay, 32 Vill. L. Rev. at 1220.

The justification given for enacting statutes of repose was the need to deal with the "long tail" of liability created by the discovery rule which supposedly "reduced an insurance company's ability to predict future liabilities." (*Anderson*, 79 Ill. 2d at 307.) Apparently, in the hysteria of the moment, few courts stopped to consider that medical malpractice statutes of repose have a minimal reductive effect on medical malpractice liability insurance premiums, and even if courts did question the wisdom of the strict limitation period, they believed the "crisis" called for a deference to "rational" legislative action, which easily overcame any constitutional objections (see *Anderson*, 79 Ill. 2d at 315-16), particularly where other jurisdictions had paved the way by holding their statutes constitutional. See *Anderson*, 79 Ill. 2d at 310 ("All of the cases that our research found have sustained the validity of the statutes"); 79 Ill. 2d at 312 ("Our 4-year time limit is also within the general area of limits that have been set by other States"); 79 Ill. 2d at 316 ("These statutes have been upheld uniformly by courts of review"); 79 Ill. 2d at 317 ("the courts in the cases cited above have upheld the classifications of the legislatures").

Statistics suggest the "long tail" effect created by the discovery rule is so minimal—and predictable in any event—that its existence cannot have a meaningful effect upon premiums and legislative abolition of remedies for those affected simply cannot be characterized as "rational." In striking down Arizona's medical malpractice statute of repose, the Arizona Supreme Court in *Kenyon* noted:

> "88% of all medical malpractice injuries which result in claims are reported within the first two years following injury, that 95 to 96% of all claims have been reported

within three years, 97% within four years, and only 2% are unreported after five years." (*Kenyon,* 142 Ariz. at 86, 688 P.2d at 978 (citing U.S. Department of Health Education & Welfare, Pub. No. 73—88, *Medical Malpractice: Report of the Secretary's Comm'n on Medical Malpractice* 254 (1973)).)

Obviously, the "long tail" effect is minimal *and* predictable. The insurance industry surely possesses a fair degree of statistical sophistication and can predict, as did the government, the number of claims which might be filed beyond the four-year period. I see no justification here for limiting the remedy of a person unknowingly injured by medical malpractice. I suggest this is an instance of the "tail" wagging the dog.

Since this court in *Anderson* found the decisions and trends in other jurisdictions so compelling, perhaps a review of current decisions from other jurisdictions is in order here, even though the court shrank from such a comparison in *Mega v. Holy Cross Hospital* (1986), 111 Ill. 2d 416, 423. Such a comparison will reveal that there is a trend in many jurisdictions holding statutes of repose, similar to our own, unconstitutional under constitutional provisions virtually indistinguishable from those in our constitution. This is not to say that there is a tidal wave of cases holding statutes of repose unconstitutional, nor would I suggest that we ride the wave for the sake of conformity, even if there were one; however, a significant number of cases have held statutes of repose in a variety of areas unconstitutional. (Medical malpractice statutes of repose: *Kenyon v. Hammer* (1984), 142 Ariz. 69, 688 P.2d 961 (violated State equal protection clause); *Austin v. Litvak* (Colo. 1984), 682 P.2d 41 (violated State equal protection guarantees); *Shessel v. Stroup* (1984), 253 Ga. 56, 316 S.E.2d 155 (violated equal protection clause); *Clark v. Singer* (1983), 250 Ga. 470, 298 S.E.2d 484 (violated equal protection clause in

wrongful death action); *Strahler v. St. Luke's Hospital* (Mo. 1986), 706 S.W.2d 7 (violated minor's constitutional right of access to courts); *Carson v. Maurer* (1980), 120 N.H. 925, 424 A.2d 825 (violated State equal protection guarantees); *Gaines v. Preterm-Cleveland, Inc.* (1987), 33 Ohio St. 3d 54, 514 N.E.2d 709 (violated State equal protection, due process, and right-to-a-remedy provisions); *Hardy v. VerMeulen* (1987), 32 Ohio St. 3d 45, 512 N.E.2d 626 (violated right-to-a-remedy provision of State constitution); *Mominee v. Scherbarth* (1986), 28 Ohio St. 3d 270, 503 N.E.2d 717 (violated minor's State due process rights); *Reynolds v. Porter* (Okla. 1988), 760 P.2d 816 (statute limiting scope of recovery constituted special legislation); *Neagle v. Nelson* (Tex. 1985), 685 S.W.2d 11 (violated State open courts provision); accord *Nelson v. Krusen* (Tex. 1984), 678 S.W.2d 918; *Sax v. Votteler* (Tex. 1983), 648 S.W.2d 661 (violated minor's due process guarantees as set forth in open courts provision of State constitution). Products liability statutes of repose: *Lankford v. Sullivan, Long & Hagerty* (Ala. 1982), 416 So. 2d 996 (violated open courts provision); *Diamond v. E.R. Squibb & Sons* (Fla. 1981), 397 So. 2d 671 (violated open courts provision); *Hanson v. Williams County* (N.D. 1986), 389 N.W.2d 319 (violated equal protection clause); *Heath v. Sears, Roebuck & Co.* (1983), 123 N.H. 512, 464 A.2d 288 (violated equal protection clause); *Kennedy v. Cumberland Engineering Co.* (R.I. 1984), 471 A.2d 195 (violated right-to-a-remedy provision); *Berry v. Beech Aircraft Corp.* (Utah 1985), 717 P.2d 670 (violated open courts provision). Architects and builders statutes of repose: *Shibuya v. Architects Hawaii, Ltd.* (1982), 65 Haw. 26, 647 P.2d 276 (violated equal protection clause); *Daugaard v. Baltic Cooperative Building Supply Association* (S.D. 1984), 349 N.W.2d 419 (violated open courts provision); *Phillips v. ABC Builders, Inc.* (Wyo. 1980), 611 P.2d 821 (violated open

courts and equal protection provisions).) The foregoing list is by no means all-inclusive, but I think the point has been made: many jurisdictions now hold statutes of repose *unconstitutional*.

Of course, sheer force of numbers does not guarantee a correct or just result—the approach taken in *Anderson* is testament to that—therefore I will discuss, briefly, some of the cases aforementioned, and the rationales employed therein. The first group of cases below is significant because the courts found statutes of repose violative of equal protection guarantees by applying standards of review ranging from strict scrutiny to the rational basis test. Although this court in *Anderson* applied the less stringent "rational basis" test to Illinois' medical malpractice statute of repose, much of the reasoning in the cases which follow is applicable under the rational basis test applied in both special legislation and equal protection analyses. Under this analysis, a classification must be reasonable, not arbitrary, and must be based upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike. *Jenkins v. Wu* (1984), 102 Ill. 2d 468, 477.

In *Kenyon*, the Arizona Supreme Court, under constitutional provisions more stringent than our own, held that the right to recover damages for bodily injury is a "fundamental" right and consequently:

> "The abolition of the discovery rule for some medical malpractice claimants is valid only if it serves a compelling state interest and is necessary to the attainment of that interest." (*Kenyon*, 142 Ariz. at 83, 688 P.2d at 975.)

The court found Arizona's medical malpractice statute of repose failed to pass constitutional muster under the foregoing test. With regard to the first component of the two-part test, the court stated:

"[W]e believe that the state has neither a compelling nor legitimate interest in providing economic relief to one segment of society by depriving those who have been wronged of access to, and remedy by, the judicial system. If such a hypothesis were once approved, any profession, business or industry experiencing difficulty could be made the beneficiary of special legislation designed to ameliorate its economic adversity by limiting access to the courts by those whom they have damaged. Under such a system, our constitutional guarantees would be gradually eroded, until this state became no more than a playground for the privileged and influential." (*Kenyon*, 142 Ariz. at 84, 688 P.2d at 976.)

Notwithstanding *Anderson*'s muddled distinctions between "real" and "nonreal" special legislation (*Anderson*, 79 Ill. 2d at 312-15), this court approved in *Anderson* the "hypothesis" rejected in *Kenyon*.

The *Kenyon* court continued its analysis, "assuming" that the State's "compelling" interest could be found in the State's interest in making quality medical care available to the public at reasonable cost. However, even assuming the existence of a compelling State interest, the court found no demonstrated necessity for the legislative enactments.

First, the court noted that malpractice premiums had not declined and health care costs had "increased to the crisis point." (*Kenyon*, 142 Ariz. at 85, 688 P.2d at 977.) Citing a contemporaneous California case for the statistics cited therein (*American Bank & Trust Co. v. Community Hospital of Los Gatos-Saratoga, Inc.* (1983), 33 Cal. 3d 674, 660 P.2d 829, 190 Cal. Rptr. 371), the *Kenyon* court observed that, despite the California malpractice act, the average cost of care in California hospitals had risen from $217 "per patient day" in 1975, to $547 per patient day in 1981, and to $620 per patient day in 1982. The court further noted that statistics cited in *American Bank* indicated that the enactment of the mal-

practice act in California reduced the cost of malpractice coverage by only $1 per patient day. The court observed:

> "In light of a present cost of $620 per patient per day, a $1.00 reduction, even if entirely attributable to the existence of the malpractice act, seems insignificant and irrelevant to the problem." *Kenyon*, 142 Ariz. at 85, 688 P.2d at 977.

Continuing its analysis, the *Kenyon* court cited decisions from other jurisdictions which had held that shortening a statute of limitations to the extent that claims were barred before they could reasonably be brought was neither rationally nor substantially related to the legislators' objectives and was so unreasonable and arbitrary that it violated the equal protection provisions of various State constitutions. (*Kenyon*, 142 Ariz. at 85, 688 P.2d at 977.) Addressing the insurance industry's supposed need for statistical certainty, the court observed:

> "If prompt actuarial certainty is required, reduction of the statute of limitations would have been a much more rational method of achieving the compelling state interest than abolition of the discovery rule and consequent abrogation of the few and unusual claims where, because of lack of knowledge *** the claimant was unable to bring the action within flat time limits." (*Kenyon*, 142 Ariz. at 86, 688 P.2d at 978.)

The court in *Kenyon* concluded that the "long tail" created by the discovery rule had been of little significance in the rise of medical liability insurance premiums and that the problem could have been handled by other measures, such as shortening the statute of limitations for medical malpractice cases or regulation of insurance premiums and procedures. *Kenyon*, 142 Ariz. at 87, 688 P.2d at 979.

Another case worthy of note is *Hanson v. Williams County* (N.D. 1986), 389 N.W.2d 319. *Hanson* involved a

products liability statute of repose passed by the North Dakota legislature which required tort actions to be brought within 10 years of the date of initial purchase of the product or within 11 years of its manufacture. Plaintiff argued that the statute violated "open courts," equal protection, and due process provisions of the North Dakota Constitution; however, the North Dakota Supreme Court addressed only the equal protection argument. Applying an intermediate standard of review because of the "important substantive right" involved (the right to recover for personal injuries), the court could find no "close correspondence between the classification created by [the statute], and the stated legislative goals as would justify the unequal treatment wrought by [the] statute." (*Hanson*, 389 N.W.2d at 328.) The court stated:

> "We do not question the Legislature's conclusion that there may have been a 'crisis' facing North Dakota manufacturers because of unaffordable products liability insurance. We also recognize the importance of the legislative action in attempting to alleviate this problem. We, however, question the solution. \*\*\*
>
> \*\*\* [W]hen we are dealing with human life and safety we believe that more is required for a [legislative] justification than a reference to the economics of suppliers of goods. Some rational basis must be advanced for the selection of the period of years \*\*\* other than the economic interests of the manufacturers or suppliers." *Hanson*, 389 N.W.2d at 328.

The supreme court of Ohio, in *Gaines v. Preterm-Cleveland, Inc.* (1987), 33 Ohio St. 3d 54, 514 N.E.2d 709, found a medical malpractice statute of repose violated equal protection, due process, and right-to-a-remedy provisions in the Ohio Constitution. First, the court reaffirmed its earlier decision in *Hardy v. VerMeulen* (1987), 32 Ohio St. 3d 45, 512 N.E.2d 626, wherein the court held that the State's four-year statute of repose for medical malpractice actions was unconstitutional, as

violative of the "right-to-a-remedy provision of Section 16, Article I of the Ohio Constitution," insofar as the statute barred the claims of medical malpractice plaintiffs "who did not know or could not reasonably have known of their injuries." (*Gaines*, 33 Ohio St. 3d at 57, 514 N.E.2d at 713-14, citing *Hardy*, 32 Ohio St. 3d at 45, 512 N.E.2d at 627.) Applying a rational basis test, the court went on to extend the breadth of *Hardy*, holding that the statute violated State equal protection guarantees in that it barred the claims of medical malpractice litigants who discover their malpractice injuries before expiration of the four-year repose period but do not thereafter have "a reasonable period for seeking legal recourse." *Gaines*, 33 Ohio St. 3d at 58-59, 514 N.E.2d at 714-15.

Moreover, the court held the statute denied claimants due process of law. The court noted that the statute of repose, in some cases, cut off an injured individual's right to pursue his claim without affording him a reasonable alternative. The court continued:

> "Although it may be stated that this severance of rights might conceivably bear 'a real and substantial relation to the *** general welfare of the public' by decreasing the sheer numbers of medical malpractice claims, thereby reducing malpractice insurance premiums and lessening the cost of health care, no evidence of such an effect has been brought forward. However, even assuming [the statute] has actually achieved this end, we find the means of achieving it are unreasonable and arbitrary, and therefore violative of due process.
>
> As explained *supra*, the severance of an individual's right to pursue a claim based on when he discovers the existence thereof is not justified by any distinguishing feature of such a person or of his claim. The fact that he did not discover his claim [in a timely manner] does not necessarily indicate that he 'slept on his rights' since in

many cases he will be unaware that he had any rights."
*Gaines*, 33 Ohio St. 3d at 59, 514 N.E.2d at 715.

The latter sentiment in *Gaines* has been expressed in other contexts. For example, in *Heath v. Sears, Roebuck & Co.* (1983), 123 N.H. 512, 524, 464 A.2d 288, 294, the supreme court of New Hampshire noted that the discovery rule is premised on the "manifest unfairness of foreclosing an injured person's cause of action before he has had even a reasonable opportunity to discover its existence." The *Heath* court captured "[t]he unreasonableness inherent in a statute which eliminates a plaintiff's cause of action before the wrong may reasonably be discovered" (*Heath*, 123 N.H. at 525, 464 A.2d at 295-96) when it quoted Judge Frank's dissent in *Dincher v. Marlin Firearms Co.* (2d Cir. 1952), 198 F.2d 821, 823, wherein he eloquently condemned the "Alice in Wonderland" effect of such a result:

> "Except in topsy-turvy land, you can't die before you are conceived, or be divorced before ever you marry, or harvest a crop never planted, or burn down a house never built, or miss a train running on a non-existent railroad. For substantially similar reasons, it has always heretofore been accepted, as a sort of logical 'axiom,' that a statute of limitations does not begin to run against a cause of action before that cause of action exists, *i.e.*, before a judicial remedy is available to a plaintiff."

To be sure, the medical malpractice statute of repose can operate in such a way as to create unjust, even ludicrous, results. The opinions set forth above suggest that the statute is vulnerable to attack on constitutional grounds no matter what standard of judicial review is employed. I believe the right to bring an action for personal injuries is a fundamental right requiring application of a strict scrutiny standard in an equal protection analysis. I believe the "certain remedy" provision of the Illinois Constitution (Ill. Const. 1970, art. I, §12) requires

this result. The supreme court of Montana has accorded *its* citizens similar rights under a right-to-a-remedy provision similar to our own. *White v. State* (Mont. 1983), 661 P.2d 1272, 1274-75 (right to bring an action for personal injuries is "fundamental").

Granted, this court in *Anderson* has already decided that those injured by reason of medical malpractice in Illinois are less worthy of protection (rational basis test applied) than their counterparts residing in other jurisdictions. I hope—but do not anticipate—that this court would reconsider its position. This court has found acceptable the "hypothesis" rejected in *Kenyon* and has determined that the medical malpractice statute of repose does not constitute special legislation. For my part, I find the position taken in *Kenyon* the more logical one. The legislature *has* conferred a "special benefit or exclusive privilege on a *** group of persons [medical, insurance, and certain other professional groups protected by statutes of repose] to the exclusion of others similarly situated." (*Jenkins*, 102 Ill. 2d at 478.) By means of the medical malpractice statute of repose, the legislature has differentiated between those who can discover their injuries and their right to sue within the four-year period and those who cannot. The latter have been deprived of any remedy, through no fault of their own, so that the insurance industry will continue to provide liability insurance to the medical profession and the medical profession will continue to provide health care to the rest of us. I will not be a party to the condonation of this form of economic blackmail, sacrificing a few innocent people for whatever minimal benefit the public and certain politically powerful commercial interests may derive. It has always been my understanding that constitutional guarantees are intended to protect individuals against the oppression which misguided popular sentiment and influential interests might engender. In order to do so, how-

ever, courts must be willing to stand their ground against legislative assaults on those guarantees. This court has not done so. Even under the deferential rational basis test applied by this court, statistics heretofore cited demonstrate that the arbitrary four-year period of repose does not have a *"fair* and *substantial* relation to the object of the legislation." (Emphasis added.) (*Jenkins,* 102 Ill. 2d at 477.) It is, therefore, violative of equal protection guarantees and constitutes special legislation. Moreover, it violates the "certain remedy" provision of our constitution.

The "certain remedy" provision in the Illinois Constitution guarantees the citizens of this State a right to a remedy and justice:

"Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation. He shall obtain justice by law, freely, completely, and promptly." (Ill. Const. 1970, art. I, §12.)

In *Mega,* this court followed precedents which interpreted this constitutional provision as a mere "expression of a philosophy." (*Mega,* 111 Ill. 2d at 424; see *Pierce v. Board of Education* (1977), 69 Ill. 2d 89, 92-93; *People v. Dowery* (1975), 62 Ill. 2d 200, 207-08.) I do not view the "certain remedy" guarantee in this light. When we begin to view the provisions of our constitution as mere expressions of philosophy, we emasculate them. Thus, constitutional rights, such as certain Federal guarantees already eroded by judicial decision, become mere echoes of a philosophy of a bygone era, swallowed up by exceptions to the rule. This is not to say that I believe an injured person should have an unlimited time to bring his action; a person who knows he has a right to sue, or should know, can be required to bring his action within a certain period of time. However, one who does not, or cannot, know he has an injury or a right to sue, must be

given an opportunity to do so. I applaud the courts which rendered the decisions which I will discuss hereafter, for they put teeth in their constitutional provisions and do not abandon their injured citizens for the sake of economics.

The supreme court of Texas is one such court. Article I, section 13, of the Texas Constitution provides in pertinent part:

> "All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." (Tex. Const. art. I, §13.)

In *Neagle*, the supreme court of Texas held unconstitutional a medical malpractice statute of repose which required the filing of an action " 'within two years *** of the breach or tort complained of or from the date the *** medical treatment that is the subject of the claim or the hospitalization for which the claim is made is completed.' " (*Neagle*, 685 S.W.2d at 12, quoting Tex. Rev. Civ. Stat. Ann. art. 4590, §10.01 (Vernon 1977).) The court held the offending statute violated the "open courts" provision of the Texas Constitution, in that it abridged a citizen's right to sue before he had "a reasonable opportunity to discover the wrong and bring suit." *Neagle*, 685 S.W.2d at 12; see also *Nelson*, 678 S.W.2d at 922.

The supreme court of Ohio in *Hardy* held a medical malpractice statute of repose unconstitutional on the ground that it denied certain individuals a remedy and thus violated "Section 16, Article I of the Ohio Constitution," which provides:

> "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." (Ohio Const. art. I, §16.)

The *Hardy* court found it unnecessary to apply even a rational basis analysis:

> "The right-to-a-remedy provision of Section 16, Article I does not require the analysis of rational-basis that is used to decide due process or equal protection arguments against the constitutionality of legislation. The fault in [the statute] is that it denies legal remedy to one who has suffered bodily injury. This the legislature may not do even if it acted with a rational basis." (*Hardy*, 32 Ohio St. 3d at 48, 512 N.E.2d at 629.)

I agree that the rational basis test need not be applied to legislative action which has the effect of negating a constitutionally guaranteed "right to a remedy." There is no balancing to be accomplished—legislative action either denies the right or it does not. Given the interpretation which the majority has placed upon this statute, this piece of legislation denies some individuals a certain remedy.

This court in *Mega* attempted to justify its emasculation of the certain-remedy provision in this medical malpractice context by reference to several prior decisions of this court (*Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161; *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1975), 61 Ill. 2d 129; *Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418; *Rozny v. Marnul* (1969), 43 Ill. 2d 54) wherein the court expressed concern that the passage of time might create "problems of proof" so as to "pose a danger of injustice." (*Mega*, 111 Ill. 2d at 425.) What is not apparent from the quotations utilized in *Mega* is that in each of the cited cases the court applied the discovery rule notwithstanding the concern expressed therein. (*Nolan*, 85 Ill. 2d at 168-69 (problems of proof outweighed by hardship to plaintiff); *Dun & Bradstreet*, 61 Ill. 2d at 137 (no suggestion of any increased problems of proof); *Williams*, 45 Ill. 2d at 432 (adequate safeguards exist

against injustice in that plaintiff has burden of proof and products liability defendant is in a better position to know the condition of its product when it left its control); *Rozny*, 43 Ill. 2d at 71 (no evidence that passage of time would make defense more difficult).) As was noted in *Williams*, since plaintiff has the burden of proof, any "problems of proof" will probably be his. Moreover, the medical defendant will normally have superior access to records and evidence. In my opinion, any "danger of injustice" posed by "problems of proof" is far outweighed by the injustice of denying an innocent plaintiff a certain remedy.

Our constitution contains a right-to-a-remedy provision similar to one found in the South Dakota Constitution. This court has interpreted our provision to be merely "an expression of philosophy." (*Mega*, 111 Ill. 2d at 424.) The South Dakota Supreme Court has used its provision to strike down a products liability statute of repose, stating:

> "Our constitution *** is solid core upon which all our state laws must be premised. Clearly and unequivocally, our constitution directs that the courts of this state shall be open to the injured and oppressed. We are unable to view this constitutional mandate as a faint echo to be skirted or ignored." *Daugaard v. Baltic Cooperative Building Supply Association* (S.D. 1984), 349 N.W.2d 419, 425.

I believe *Anderson, Mega,* and their progeny should be overruled. The doctrine of *stare decisis* is not an inflexible rule requiring this court to blindly follow precedents and adhere to prior decisions. (*Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11, 26.) *Anderson* and *Mega* were wrongly decided. It makes no sense to punish innocent victims of medical malpractice *ad infinitum* in an effort to maintain consistency. When a thing is wrong, it is wrong. The longer

we wait to right this wrong, the longer the injustice will continue and the more difficult it will be to rectify the error, embedded in case law through usage.

> " 'Justice in this case cries out for a remedy. How can *anyone* be precluded from asserting a claim by a statute of limitations which expires before the discovery of the injury? How can anyone charged with the responsibility of administering justice allow such an absurdity?' " (Emphasis added.) (*Mominee v. Scherbarth* (1986), 28 Ohio St. 3d 270, 293, 503 N.E.2d 717, 735 (Douglas, J., concurring, quoting *Amer v. Akron City Hospital* (1976), 47 Ohio St. 2d 85, 93, 351 N.E.2d 479, 485 (Celebrezze, J., dissenting)).)

I cannot subscribe to the majority opinion.

JUSTICES WARD and CLARK join in this dissent.