THE HARTFORD FIRE INSURANCE COMPANY *et al.*, Plaintiffs, v. AR-CHITECTURAL MANAGEMENT, INC., *et al.*, Defendants (Jack Goldman *et al.*, Third-Party Plaintiffs-Appellants; KC&M Engineers & Associates *et al.*, Third-Party Defendants-Appellees; Architectural Management, Inc., *et al.*, Third-Party Defendants).

First District (5th Division)   No. 86—1474

Opinion filed June 26, 1987.—Rehearing denied August 21, 1987.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Kevin R. Sido and Nancy G. Lischer, of counsel), for appellants.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James M. Hoey, James R. Swinehart, and Mayer Goldberg, of counsel), for appellee William H. Peterson.

Lurie, Sklar & Simon, Ltd., of Chicago, for other appellees.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This appeal is from the dismissal of a third-party complaint for contribution on the ground that it was not filed within the time prescribed by law.

On December 30, 1981, an action was filed by the subrogees of a school district for damages resulting from a fire at the Oakview School in Bolingbrook, Illinois, on January 1, 1980. The complaint, which was amended on September 13, 1982, named 10 defendants, including the architects, FGM, Inc., and Jack Goldman (collectively FGM), alleging, *inter alia*, various acts of negligence by them in the design and construction of the school. On December 17, 1985, FGM filed a third-party complaint for contribution against the electrical engineers, KC&M Engineers and Associates, Inc., and Ronald Millies (collectively KC&M), and the mechanical engineers, Hevac Engineers, Inc. (Hevac), and William Peterson. KC&M moved to dismiss FGM's complaint on the ground that it was time barred by section 13—214(b) of the Code of Civil Procedure (the Code) (Ill. Rev. Stat. 1981, ch. 110, par. 13—214(b)), the construction statute of repose. In addition thereto, Hevac and Peterson also moved to dismiss the complaint on the ground that it was not timely filed under section 94 of the Business Corporation Act (Ill. Rev. Stat. 1971, ch. 32, par. 157.94).

In support of its motion, KC&M submitted copies of the pleadings filed in a third-party action for contribution brought in October 1984 by Simplex Time Recorder Company, another of the original defendants. Among those documents were KC&M's motion to dismiss Simplex' complaint on the basis of section 13—214(b), to which was attached an excerpt from the evidence deposition of John W. Moore, the State Director for the Illinois School Building Commission who was responsible for overseeing the design and construction of the school, in which Moore read from a letter he wrote to Goldman, dated July 1, 1971, stating that "the Oakview School Design Project sponsored by the Commission has reached a successful conclusion." Also attached was the order dismissing the Simplex action on June 6, 1985. Following a hearing on May 5, 1986, the trial court granted FGM's motion to voluntarily dismiss Hevac and, upon a finding that the action

was not brought within the time permitted by section 13—214(b), also granted the remaining third-party defendants' motions to dismiss FGM's complaint. This appeal followed.

OPINION

Section 13—214, pursuant to which the complaint was dismissed, provided in pertinent part:

"(a) Actions based upon tort, contract or otherwise against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property shall be commenced within 2 years from the time the person bringing an action, *** knew or should reasonably have known of such act or omission.

(b) No action based upon tort, contract or otherwise may be brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property after 12 years have elapsed from the time of such act or omission. However, any person who discovers such act or omission prior to expiration of 12 years from the time of such act or omission shall in no event have less than 2 years to bring an action as provided in subsection (a)."[1] Ill. Rev. Stat. 1981, ch. 110, pars. 13—214(a), (b).

FGM contends that section 13—214(b) is inapplicable to its third-party contribution action, positing that the construction statute of repose applies only to "direct" actions by the original plaintiff against a tortfeasor in the construction industry and "has no application to a person's right of action under the Contribution Act." FGM maintains that the only applicable time limitation is that found in section 13—204 (Ill. Rev. Stat. 1983, ch. 110, par. 13—204), because, unlike section 13—214, it specifically governs actions for contribution. Section 13—204 states:

"No action for contribution among joint tortfeasors shall be commenced with respect to any payment made in excess of a party's pro rata share more than 2 years after the party seeking contribution has made such payment toward discharge of

---

[1]Section 13—214 was amended by Public Act 84—551, effective September 18, 1985, to provide a 4-year statute of limitations in subsection (a) and a 10-year statute of repose and 4-year discovery period in subsection (b). FGM has made no contentions concerning the impact of this amendment, stating in its brief that "it is irrelevant to this appeal whether the ten or twelve-year statute was in effect."

his or her liability." Ill. Rev. Stat. 1983, ch. 110, par. 13—204.

██ ■ Noting first that, while section 13—204 expressly bars contribution actions brought more than two years after payment by a joint tortfeasor, it does not state that all contribution actions brought within two years are timely, KC&M and Peterson assert that it is clear from both the language and legislative history of section 13—214 that the limitations and repose period provided therein apply to third-party claims for contribution arising out of an act or omission in the construction process. We agree.

As quoted above, the language of section 13—214 broadly and unequivocally states that, *"No action* based upon tort, contract *or otherwise* may be brought against *any person* for an act or omission [in the construction process] after 12 years have elapsed." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 110, par. 13—214(b).

That section 13—214 was intended to encompass all actions against persons involved in the construction-related activities enumerated therein is manifest not only from the language employed but also from statements made during the legislative debates preceding its passage.

Representative Dunn, who initially introduced the bill later codified as section 13—214 (House Bill 1031) to provide for limitation and repose periods of 2 and 8 years, respectively—which were subsequently extended by amendment to 2 and 12 years, respectively, on the recommendation of the Governor—explained to the members of the House, "so, there can be a total of 10 years. Any claim *** which is not discovered within the 8-year period is barred." 80th Ill. Gen. Assem., House Proceedings, May 25, 1979, at 30.

The scope of section 13—214 was also addressed by Representative Leinenweber, an opponent of House Bill 1031. Urging defeat of it, he cautioned:

"I'd like to point out what you're doing to an owner of a building. An *** owner of a building hires an architect to construct a building for him. The architect, at the end of 8 years through his negligence, is relieved of any responsibility if that building collapses. But, I tell you, the owner is not. Now currently, what happens, if someone hires an architect to design a building for him, and that building, say like up on Michigan Avenue, a sheet of marble falls off of that building, then the owner will be sued for negligence in allowing a sheet of marble to fall off of his building, and for the damage that that would cause. The owner, currently, would have the right to bring a third party action against the architect to show that it was the design defect that

caused this particular piece of marble to fall. After 8 years under this bill, the owner would not longer be able to do that. You are stripping them of any possible indemnity, any possible indemnity action, any possible way that they can go against the person who truly caused the injury, after 8 years if you adopt this Bill, and I tell you, if you are an owner *** if you have construction work done, you're gonna be left totally on your own after 8 years when the architect under this Bill is relieved of any responsibility. It won't do any good as far as the insurance premiums are concerned. No one's gonna make out on this Bill, except you're gonna hurt a few people. Principally, the owners of buildings." (80th Ill. Gen. Assem., House Proceedings, May 25, 1979, at 33-34.)

Representative Stearney, another opponent of the bill, agreed with Representative Leinenweber's assessment of its impact. Using the same hypothetical situation, he stated:

"[A]ssuming eight years and one day after construction of a building, *** a man and his son are walking passed [sic] that building, and a piece of falling marble comes down and injures the boy. *** Under the terms of his Bill now, I ask you to be very careful, in reading, is that the architects and everybody in construction and management would be completely freed of all liability." (80th Ill. Gen. Assem., House Proceedings, May 25, 1979, at 36.)

Notwithstanding these admonitions, a large majority of the members of the House, and subsequently the Senate, voted in favor of House Bill 1031; thus, it cannot be said that the General Assembly did not intend, or realize, its future effect.

Furthermore, in urging its passage, Representative Dunn explained that the purpose of the legislation is to protect persons involved in the design and construction of buildings from potentially unlimited liability, stating that absent specific limitations, they "are liable their entire lives and *** beyond their lives, beyond the grave." 80th Ill. Gen. Assem., House Proceedings, May 25, 1979, at 11.

Excepting contribution actions from the purview of section 13—214 could in many instances result in the contravention of this stated purpose—as can easily be seen from the following example proffered by KC&M. Assuming that within 10 years after the renovation of an 80-year-old building, an injury occurs which is determined to have been caused by the combination of latent original and newly discovered renovation design defects, although the plaintiff could not bring a direct action against the original architect by reason of section 13—

214, under FGM's reasoning the renovation architect would, despite the passage of approximately 90 years, nevertheless be able to bring a contribution action against him as a joint tortfeasor. However unlikely such a situation might seem, the fact that it is possible illustrates the fundamental flaw in FGM's reasoning.

Conversely, application of the statute of repose does not, as FGM posits, defeat the purpose of the Contribution Act (Ill. Rev. Stat. 1985, ch. 70, par. 301 *et seq.*) to apportion damages among joint tortfeasors according to their relative fault by enabling a plaintiff to "force one tortfeasor to shoulder the entire responsibility for others' actions simply by filing suit on the last day of the repose period." This argument either ignores or misconstrues the provision in section 13—214(b) that *"any person* who discovers such act or omission [in the construction process] prior to expiration of [the period of repose] shall in no event have less than 2 years to bring an action as provided by subsection (a) of this Section." (Ill. Rev. Stat. 1983, ch. 110, par. 13—214(b).) The phrase "any person" obviously includes those parties who were themselves involved in the construction process. Thus, where a party discovers the act or omission as late as one day before expiration of the 12 years' repose period by reason of an action being filed against him by the injured party on that date, he nevertheless has two more years within which to file a counterclaim for contribution. Similarly, assuming that the discovery occurs prior to the institution of a suit by a plaintiff, such as might occur in situations where an insurance claim is submitted by the injured person, the party potentially liable for payment of that claim may commence, even before his own liability is established, a separate action for contribution from those believed to be joint tortfeasors. (See Ill. Rev. Stat. 1985, ch. 70, pars. 302, 305; *Laue v. Leifheit* (1984), 105 Ill. 2d 191, 473 N.E.2d 939; *Verson Allsteel Press Co. v. Major Spring & Manufacturing Co.* (1982), 105 Ill. App. 3d 419, 434 N.E.2d 456.) In view thereof, we cannot agree with FGM that the policy underlying the Contribution Act is undermined by application of section 13—214(b) to contribution actions.

■ Turning then to the facts before us, we note initially that while FGM now disputes that the design and construction of the school was completed by July 1971, the record is devoid of any documentation that the completion occurred at a later date. Second, on the basis of the record before us, the latest date on which FGM could be charged with discovery of the acts or omissions alleged in its counterclaim for contribution was December 30, 1981, the date on which the original action was filed by the plaintiffs. Adding thereto the two-

year "discovery" extension in effect at that time, FGM then had until December 30, 1983, to file a counterclaim for contribution. Inasmuch as the counterclaim was not filed until December 17, 1985, almost 14½ years after completion of the project and nearly four years after the original action was filed, we cannot say that the trial court erred in dismissing it on the ground that it was time barred by section 13—214(b). Accord Apogee Enterprises, Inc. v. Hans Rosenow Roofing Co. (N.D. Ill., March 11, 1986) No. 84 C 4508.

For the reasons stated, the order of the trial court dismissing FGM's counterclaim for contribution is affirmed.

Affirmed.

PINCHAM and MURRAY, JJ., concur.