FREEPORT MEMORIAL HOSPITAL, Plaintiff-Appellant, v. LANKTON, ZIEGELE, TERRY & ASSOCIATES, INC., *et al.*, Defendants-Appellees.

Second District   No. 2—87—0908

Opinion filed June 8, 1988.

Richard R. Haldeman, of Williams & McCarthy, P.C., of Rockford (John J. Holevas, of counsel), for appellant.

Douglas J. Pomatto, of Heyl, Royster, Voelker & Allen, P.C., of Rockford (Kevin J. Luther, of counsel), for appellee Lankton, Ziegele, Terry & Associates, Inc.

Richard K. VanEvera, of Barrick, Switzer, Long, Balsely & VanEvera, of Rockford (Richard M. Butera, of counsel), for appellee J. P. Cullen & Sons Construction Corporation.

JUSTICE NASH delivered the opinion of the court:

Plaintiff, Freeport Memorial Hospital, brought this action for the recovery of damages against defendants, Lankton, Ziegele, Terry and Associates, Inc. (LZT) (architects), and Cullen & Sons Construction Corporation (Cullen) (general contractor), for the alleged negligent de-

sign and construction by them of an addition to its hospital. The trial court granted defendants' motions to dismiss pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—619), finding that the action was barred by the statute of limitations. Plaintiff appeals, contending that there were disputed questions of fact precluding dismissal, and that LZT is estopped from raising the statute of limitations as a defense.

Plaintiff's complaint was filed on December 27, 1984, and alleged, *inter alia*, that defendants LZT and Cullen, respectively, designed and constructed an addition to plaintiff's hospital building which was completed in 1976; that defendants breached their duty to plaintiffs, under the agreement between the parties, by negligently failing to conform to industry standards; failing to accommodate the freeze-thaw cycle weather conditions of Freeport, Illinois; failing to provide adequate control joints to allow for the freeze-thaw cycle; failing to provide for and supervise construction of vertical control joints, horizontal expansion joints, shelf angles and lintels.

The complaint alleged further that plaintiff "did not know or have any reason to know of these defects caused by the negligence of defendants until the defects were discovered on September 18, 1983, during an inspection by Hansen, Lind, Meyer, P.C."

Finally, it was alleged that as a proximate result of the alleged negligence, the brick walls of the building addition have cracked and become subject to efflorescence, to plaintiff's damage.

Defendants each filed similar motions to dismiss in which they alleged that plaintiff's action was barred by reason of the two-year limitation period within which such actions must then have been brought pursuant to section 13—214 of the Code of Civil Procedure. (Ill. Rev. Stat. 1983, ch. 110, par. 13—214.) Defendants alleged that plaintiff knew, or reasonably should have known, of its injury more than two years prior to commencing the action, and the motions were each supported by affidavits and other documents thereto attached.

In his affidavit, Roy Colwell, a former assistant administrator for Freeport Memorial Hospital, stated that he was aware of water seeping from the exterior to the interior of the fourth and fifth floors of the addition in 1978 and in 1979-80 learned from the hospital chief of maintenance, and observed, brick cracking of which he advised Ray Wine, who was the hospital administrator. Mark Cullen stated in his affidavit that he was the president of defendant Cullen on November 23, 1982, and met at the hospital with Roy Colwell and Ray Wine, its administrators. They toured the addition which had been completed in 1976 and Colwell mentioned the problem of water leaking through its

walls.

The affidavit of Val E. Fuger states that in 1981 he was employed by defendant LZT as project architect and received complaints from plaintiff's administrator, and others, regarding masonry wall cracks in the addition and had discussed it with them in March and April of 1981, and earlier; that Fuger conducted an investigation of the problem and reported on it to plaintiff's administrator by letter dated April 10, 1981, which was attached to his affidavit, and stated that after viewing the cracks and discussing the plans for the addition with personnel who had been involved with its design and construction, he reached the following conclusions:

"3. The conclusions as to this matter are as follows:

a. The cracks are caused by abnormally rapid expansion and contraction of the brick panels created between the center line of each column by the control joint designed to relieve just such contraction and expansion.

b. Since these cracks have just recently become apparent, it is my conclusion that some of the rather sudden temperature changes that occurred during this past winter (1980-81) caused such a rapid expansion followed by rapid contraction that the masonry anchors tieing [sic] the face brick to the concrete structure behind could not adjust as quickly.

c. My conclusion is based on the fact that the cracks appear to occur at locations where masonry anchors should be.

d. I recommend that the hospital retain a masonry contractor to remove bricks from some of the damaged areas to determine if, in fact, these cracks occur where masonry anchors are located. After the bricks have been removed they should be replaced with new brick work installing masonry anchors of a different design which will permit horizontal and vertical movement while still retaining the face brick.

e. As part of this work, I recommend that all control and expansion joints be checked by a qualified contractor, and either be repaired or have all the old sealant removed and replaced. Possible sealant materials which might be used are on an attached sheet."

Plaintiff filed "objections" to defendants' motions to dismiss, and a memorandum in opposition, but offered no countering affidavits, stating plaintiff did not dispute the facts set forth in the defendants' supporting affidavits, but differed in the interpretation to be placed upon them. After considering the arguments of the parties, the trial court granted defendants' motions to dismiss and this appeal fol-

lowed.

■ We note first that in its brief plaintiff has referred to a report dated February 15, 1984, by Hansen, Lind, Meyer, P.C., who are consultants employed by plaintiff to examine the condition of the addition to the hospital. A motion to strike references to that report on the ground it is not a part of the record of this case was allowed by this court, and we will not consider it. See Supreme Court Rule 191(a) (107 Ill. 2d R. 191(a)).

Plaintiff contends that its action was brought within the then applicable two-year time limitations (see Ill. Rev. Stat. 1983, ch. 110, pars. 13—214(a), (b)) because it did not discover the structural defects until the addition was inspected by Hansen, Lind, Meyer, P.C., on September 18, 1983. Alternatively, plaintiff argues that the doctrine of equitable estoppel precludes LZT from invoking the statute of limitations as a defense because its employee, Val Fuger, in his letter of April 10, 1981, represented that sudden temperature changes caused bricks in the addition to crack, and this representation induced plaintiff to forego additional investigation as to the nature of the defects.

■■ ■ The discovery rule set forth in section 13—214(a) of the Code of Civil Procedure requires that a plaintiff bring an action "within 2 years from the time the person bringing an action *** knew or should reasonably have known of such act or omission." (Ill. Rev. Stat. 1983, ch. 110, par. 13—214(a).) The limitations period does not necessarily commence when the plaintiff first learns of an injury, nor is it the point in time when the plaintiff knows that a cause of action exists. (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 415, 430 N.E.2d 976.) The statute starts to run when the plaintiff knows or reasonably should know of the injury and knows or reasonably should know that the injury was wrongfully caused. (*County of Du Page v. Graham, Anderson, Probst & White, Inc.* (1985), 109 Ill. 2d 143, 153-54, 485 N.E.2d 1076.) At that point, the plaintiff is obligated to make further inquiries to determine whether an actionable wrong was committed. (*Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 171, 421 N.E.2d 864.) The supreme court has made clear that the term "wrongfully caused" does not require knowledge of negligent conduct or the existence of a cause of action. (*Knox*, 88 Ill. 2d at 416.) While the time at which a party knows or should reasonably know of both an injury and that it was wrongfully caused is generally a question of fact for the fact finder (*Knox*, 88 Ill. 2d at 416), where it is apparent from the undisputed facts that only one conclusion can be drawn, the question becomes one of law for the court. (*Witherell v. Weimer* (1981), 85 Ill. 2d 146, 156, 421 N.E.2d 869.) We conclude that plaintiff

possessed sufficient knowledge of its injury and that it was wrongfully caused when it received the April 10, 1981, letter from Val Fuger, thus triggering the running of the statute of limitations at that time.

Plaintiff first became aware of injury in 1978 when it discovered water seepage in the addition and again at some time between 1979 and 1980 when it learned of cracked bricks. Prior to March 1981, plaintiff was aware of masonry wall cracks in the addition, and complained to LZT. LZT investigated and concluded that, based on sudden temperature changes occurring during the previous winter, the cracks were likely caused by abnormal expansion and contraction of brick panels. Val Fuger, LZT's project engineer, recommended by letter in April 1981 that plaintiff consult a masonry contractor to determine if, in fact, his conclusions were accurate. As far as we can discern from the record, plaintiff did not consult a masonry contractor or outside consulting firm until September 16, 1983, more than two years later. Furthermore, it is apparent from Fuger's letter that, if his conclusions were correct, plaintiff should have known then of the possible liability of at least one of the defendants. The letter states that plaintiff should install "masonry anchors of a different design which will permit horizontal and vertical movement." Neither plaintiff's complaint nor anything in the record permits us to determine that the defect for which this action was brought is other than the defect noticed in Fuger's letter. We conclude that plaintiff was obligated to make further inquiry to determine whether an actionable wrong was committed after receiving Fuger's April 10, 1981, letter.

Plaintiff also argues that Val Fuger's representation that its injury was caused by sudden temperature changes during the previous winter induced it to forego additional investigation as to the nature of the structural defects in the hospital addition, and that defendant LZT is estopped from relying upon the limitations statute.

■■ ■ The general rule is that where a party, by his statement or conduct, leads another to do something he would not have done, but for the statements or conduct of the other, the one guilty of the expression or conduct will not be allowed to deny his utterances or acts to the damage of the other party. (*Dill v. Widman* (1952), 413 Ill. 448, 455, 109 N.E.2d 765.) The principle of equitable estoppel has been applied to bar reliance on the statute of limitations even where there was no intent to deceive or mislead. (See *Witherell v. Weimer* (1987), 118 Ill. 2d 321, 330, 515 N.E.2d 68.) While there is generally no duty to apprise an adversary of his rights, one cannot justly or equitably lull his adversary into a false sense of security, causing him to subject

his claim to the bar of the statute of limitations, and then plead the delay caused by his course of conduct as a defense to the action. *Beynon Building Corp. v. National Guardian Life Insurance Co.* (1983), 118 Ill. App. 3d 754, 763, 455 N.E.2d 246.

█ In our view, the facts of this case do not reasonably permit an inference that Fuger's representations lulled plaintiff into a false sense of security. He advised plaintiff that it would be necessary to hire a masonry contractor to confirm his opinion, and that a design change would be necessary to prevent the problem in the future. We find it difficult to conclude that plaintiff was lulled into a false sense of security in the face of knowledge that additional structural damage could occur if it did not make the recommended investigation and changes. In circumstances where a vendor has attempted, unsuccessfully, to repair a defect which surfaces, courts have held that efforts to repair will toll the statute of limitations only where the vendor has insisted that the repairs will correct the problem. (See, *e.g.*, *Axia, Inc. v. I. C. Harbour Construction Co.* (1986), 150 Ill. App. 3d 645, 656, 501 N.E.2d 1339, *appeal denied* (1987), 114 Ill. 2d 543 (where, from 1979 through 1983, vendor engaged in continuing conduct to repair and correct the problems with the building and the plaintiff clearly relied on such conduct, vendor was estopped from asserting the statute of limitations); *Ranker v. Skyline Corp.* (1985), 342 Pa. Super. 510, 493 A.2d 706 (repair doctrine will toll the statute of limitations where vendor attempts to make repairs and represents that repairs have or will cure defect); *Little Rock School District v. Celotex Corp.* (1978), 264 Ark. 757, 574 S.W.2d 669 (where vendor insists that defect can be repaired and attempts to do so, statute of limitations is tolled).) Here, plaintiff did not forego its action while attempting to make the suggested repairs, nor did Fuger represent that these repairs would cure the defect.

█ Furthermore, the purpose of the statute of limitations is not to shield the wrongdoer but to discourage stale claims and encourage diligence in the bringing of actions. (*Moorman Manufacturing Co. v. National Tank Co.* (1980), 92 Ill. App. 3d 136, 152, 414 N.E.2d 1302, *rev'd on other grounds* (1982), 91 Ill. 2d 69, 435 N.E.2d 443.) The discovery doctrine is an exception to the general rule, and, as such, the plaintiff must bring himself within the intent of the rule. (*Fure v. Sherman Hospital* (1978), 64 Ill. App. 3d 259, 270, 380 N.E.2d 1376.) If the complaint on its face demonstrates that the action has been filed beyond the limitations period, as in the present case, the plaintiff must also allege facts showing that the cause of action was not and could not have been discovered through the exercise of due diligence.

(*Moorman Manufacturing Co.*, 92 Ill. App. 3d at 152; *Pratt v. Sears Roebuck & Co.* (1979), 71 Ill. App. 3d 825, 829, 390 N.E.2d 471.) Here, plaintiff has alleged no facts explaining why its cause of action was not discovered sooner. The complaint merely asserts that plaintiff "did not know or have any reason to know of these defects which were caused by LZT's negligence until the defects were discovered on or about September 16, 1983, during an inspection undertaken by Hansen, Lind, Meyer, P.C.," and were insufficient to invoke the discovery rule.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

INGLIS and WOODWARD, JJ., concur.