THE BOARD OF LIBRARY DIRECTORS OF THE VILLAGE OF LOMBARD, Plaintiff-Appellee, v. SKIDMORE, OWINGS AND MERRILL, Defendant (Wil-Freds, Inc., Defendant and Third-Party Plaintiff-Appellant; Ringbloom Masonry, Third-Party Defendant-Appellee).

Second District   No. 2—90—0810

Opinion filed June 20, 1991.—Rehearing denied July 18, 1991.

Nicholas A. Riewer and Timothy J. Harris, both of Bollinger & Ruberry, and Querrey & Harrow, Ltd., both of Chicago (Paul Lively, of counsel), for appellant.

James T. Ferrini and Susan Condon, both of Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago, and Thomas H. Ryerson, of Clausen, Miller, Gorman, Caffrey & Witous, P.C., and McKenna, Storer, Rowe, White & Farrug, both of Wheaton (H. Evan Williams IV, of counsel), for appellee Ringbloom Masonry.

Roger A. Ritzman, of Peregrine, Stime, Newman, Ritzman & Bruckner, Ltd., of Wheaton (Dale W. Bruckner of counsel), for appellee Board of Library Directors of the Village of Lombard.

JUSTICE GEIGER delivered the opinion of the court:

The defendant, third-party plaintiff, Wil-Freds, Inc. (Wil-Freds), appeals from an order denying summary judgment against the plaintiff, the Board of Library Directors of the Village of Lombard, and dismissing its third-party complaint against Ringbloom Masonry (Ringbloom). We affirm in part and dismiss in part.

The facts relevant to this appeal are as follows. In 1975, the plaintiff contracted with the architectural firm of Skidmore, Owings & Merrill (SOM) for architectural and engineering services in relation to the plaintiff's plans to remodel and construct an addition to a local library. In July 1977, the plaintiff contracted with Wil-Freds to act as general contractor for the library addition and remodeling. Wil-Freds subcontracted the library masonry work to Ringbloom, and subcontracted other portions of the construction work to other contractors.

In 1978, the masonry walls exhibited a condition known as "efflorescence." This occurs when water moves from a cavity behind the masonry through a salt deposit, absorbs the salt, and leaves a visible deposit of salt on the exterior surface of the masonry. The salt may occur in either the masonry or the mortar. Efflorescence is a sign that trapped water is leaking through the wall and that there is unwanted salt in the masonry material.

In October 1978, the plaintiff and SOM discussed the efflorescence problem. One possible solution was to seal the brick with a waterproofing material. In April 1979, SOM sent a proposed change order to the plaintiff to authorize the sealing of the masonry walls. In May 1979, SOM distributed to the plaintiff a "punch list" which noted continued efflorescence.

In June 1979, the plaintiff and technical representatives for J.N. Lucas & Associates (Lucas) inspected the efflorescence problem. The Lucas representatives sent SOM a follow-up letter which noted that

the efflorescence was related to moisture in the walls and that some locations showed slight mortar deterioration and were probably the moisture's entry point. Wil-Freds also received a copy of this letter. In July 1979, Wil-Freds received a change order to seal the masonry wall to combat the efflorescence.

In October 1979, the plaintiff, SOM, and Wil-Freds observed and investigated a separate problem involving moisture infiltration and leakage relating to the waterproofing membrane on the library roof. In March 1983, the plaintiff commissioned an independent consultant to investigate a water leak. The consultant issued his report on May 25, 1983; the report stated that upon initial inspection, he could not locate the source of the water. An October 10, 1983, consultant's report concluded that the waterproofing done years earlier was the source of the efflorescence.

On December 12, 1984, the plaintiff filed its complaint against SOM and Wil-Freds. The plaintiff alleged breach of contract and architectural malpractice against SOM, and breach of contract and negligence against Wil-Freds. On July 22, 1988, Wil-Freds brought its third-party complaint seeking indemnification from Ringbloom.

Ringbloom brought a motion under section 2—615 of the Code of Civil Procedure to dismiss the third-party complaint (Ill. Rev. Stat. 1989, ch. 110, par. 2—615), arguing that Wil-Freds had not alleged a claim for indemnification. Ringbloom also brought a dismissal motion under section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—619), arguing that the indemnification clause in its subcontract with Wil-Freds was void (see Ill. Rev. Stat. 1989, ch. 29, par. 61), and that the third-party suit was barred by the statute of limitations (see Ill. Rev. Stat. 1989, ch. 110, par. 13—214).

On March 20, 1989, the trial court found that Wil-Freds should have "discovered" the masonry problems no later than 1979, and that Wil-Freds' third-party complaint relating to problems arising out of the construction of the addition and the remodeling was barred by the applicable statute of limitations (Ill. Rev. Stat. 1989, ch. 110, par. 13—214). The trial court granted Ringbloom's motion to dismiss.

Wil-Freds then brought a motion for summary judgment, arguing that since the trial court found that Wil-Freds should have "discovered" the defects no later than 1979, then the plaintiff also should have "discovered" the defects within the same time, since the plaintiff and Wil-Freds were privy to the same information. In the alternative, Wil-Freds sought reconsideration of the March 20, 1989, order. The judge that had heard Ringbloom's motion to dismiss, Judge Peccarelli, had reassigned the case to Judge Teschner.

On June 6, 1990, after hearing the arguments, Judge Teschner denied Wil-Freds' motion for summary judgment. On June 25, 1990, the trial court expressly found that there was no just reason to delay enforcement or appeal of the orders of March 20, 1989, and June 6, 1990 (see 134 Ill. 2d R. 304(a)). This appeal followed.

Before addressing Wil-Freds' other issues, we turn to Wil-Freds' contention that the trial court erred in denying its motion for summary judgment against the plaintiff.

■■ ■ A final order either terminates the litigation between the parties on the merits or disposes of the rights of the parties in regard to the entire controversy or some definite part thereof. (*Kawa v. Harnischfeger Corp.* (1990), 204 Ill. App. 3d 206, 210.) Where there has been no final judgment on the claim for which the trial court denied summary judgment, the denial of a motion for summary judgment is nonfinal and nonappealable. (See *Deerfield Management Co. v. Ohio Farmers Insurance Co.* (1988), 174 Ill. App. 3d 837, 840-41.) Moreover, the trial court's finding that there was "no just reason for delaying enforcement or appeal" does not make an interlocutory order denying summary judgment a final judgment. (*Davis v. Childers* (1965), 33 Ill. 2d 297, 300-01.) We find that we do not have jurisdiction to address the denial of the motion for summary judgment.

We now turn to the other issues raised in the appeal. Wil-Freds first argues that the statute of limitations in section 13—214 of the Code of Civil Procedure does not apply to third-party actions for contractual indemnification. It contends that since a defendant can wait until it is found liable and then file its third-party complaint for indemnification (see *Gibbons v. Nalco Chemical Co.* (1980), 91 Ill. App. 3d 917, 920), it brought its third-party complaint within the statute of limitations.

Ringbloom, relying on the cases of *Hartford Fire Insurance Co. v. Architectural Management, Inc.* (1987), 158 Ill. App. 3d 515, and *La Salle National Bank v. Edward M. Cohon & Associates, Ltd.* (1988), 177 Ill. App. 3d 464, argues that the four-year statute of limitations in section 13—214 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 13—214) is the applicable statute of limitations for third-party actions based upon an underlying action covered by section 13—214. In both *Hartford* and *La Salle*, the First District Appellate Court found that section 13—214's statute of limitations for construction "[a]ctions based upon tort, contract or otherwise" also controlled the time in which counterclaims and third-party complaints for contribution could be filed. *La Salle*, 177 Ill. App. 3d at 471; *Hartford*, 158 Ill. App. 3d at 518.

■ Section 13—214, in pertinent part, provides:

"(a) Actions based upon tort, contract or otherwise against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property shall be commenced within 4 years from the time the person bringing an action, or his or her privity, knew or should reasonably have known of such act or omission." Ill. Rev. Stat. 1989, ch. 110, par. 13—214(a).

In *Hartford*, the plaintiffs brought a complaint against FGM, Inc. (FGM), in 1981. The complaint alleged various acts of negligence in the construction of a school. In 1985, FGM brought its counterclaim for contribution against several engineers. The engineers moved to dismiss the counterclaim, arguing that the then two-year statute of limitations in section 13—214 (Ill. Rev. Stat. 1981, ch. 110, par. 13—214) controlled the third-party action. (158 Ill. App. 3d at 516.) FGM argued that the longer statute of limitations governing contribution actions controlled all actions in contribution (see Ill. Rev. Stat. 1983, ch. 110, par. 13—204). The trial court granted the motion to dismiss. 158 Ill. App. 3d at 517.

The Appellate Court for the First District affirmed the trial court's dismissal, finding that the section 13—214 statute of limitations "was intended to encompass *all actions* against persons involved in the construction-related activities enumerated therein." (Emphasis added.) (158 Ill. App. 3d at 518.) The court then reasoned that

"the latest date on which FGM could be charged with discovery of the acts or omissions alleged in its counterclaim for contribution was December 30, 1981, the date on which the original action was filed by the plaintiffs. Adding thereto the two-year 'discovery' extension [of section 13—214] in effect at that time, FGM then had until December 30, 1983, to file a counterclaim for contribution." 158 Ill. App. 3d at 520-21.

In *La Salle*, the facts and result were almost identical. The First District did, however, reason that "in an appropriate case, the date of service of the complaint upon a defendant rather than the date of filing of the complaint, particularly where the service date came much later than the date of filing," would control. 177 Ill. App. 3d at 471.

■ Following the holdings in *Hartford* and *La Salle*, we find that the statute of limitations set out in section 13—214 applies to third-party actions for indemnification which are filed in cases covered by that section of the Code of Civil Procedure. Section 13—214 requires that an action be commenced "within 4 years from the time the per-

son *** *knew or should reasonably have known* of such act or omission." Ill. Rev. Stat. 1989, ch. 110, par. 13—214(a).

Having found that Wil-Freds' action is controlled by section 13—214's statute of limitations, we now turn to whether the trial court erred in finding that Wil-Freds should have "discovered" the masonry problems no later than 1978.

In support of its motion to dismiss, Ringbloom included the affidavit of Neal Anderson, one of SOM's architects. Anderson stated that the efflorescence was observed as early as October 1978 when SOM reviewed Wil-Freds' recommendations to correct the problem. By May 7, 1979, the time that SOM issued its certification of substantial completion, the masonry walls were exhibiting the effects of efflorescence. By May 6, 1979, through the "punch list," Wil-Freds knew of the efflorescence.

Ringbloom also offered the deposition testimony of Daniel Lyne, the plaintiff's expert. When asked whether the efflorescence was specifically due to the fact that the mortar had excessive levels of salt, Lyne answered, "It could be. *** That is a possibility." Lyne did not "specifically" have an opinion as to what caused the efflorescence. However, he did know that there were "ingredients" in the wall that would allow for water passage, "a major fault."

Wil-Freds, in its response to the motion to dismiss, argued that it did not discover "the specific nature of the problems" until Lyne was deposed beginning on October 21, 1986. However, it did not offer any counterevidentiary material to Ringbloom's motion to dismiss.

We find the case of *Freeport Memorial Hospital v. Lankton, Ziegele, Terry & Associates* (1988), 170 Ill. App. 3d 531, controlling on this question. In *Freeport*, the plaintiff sought recovery from an architect and a general contractor for alleged construction-related negligence. (170 Ill. App. 3d at 532-33.) The plaintiff alleged that in 1976, the defendants completed an addition to the plaintiff's hospital; however, the plaintiff did not bring its complaint until December 27, 1984. The complaint further alleged that the plaintiff "did not know or have any reason to know of these defects caused by the negligence of defendants until *** discovered on September 18, 1983, during an inspection." 170 Ill. App. 3d at 533.

The *Freeport* defendants moved for dismissal, arguing that the plaintiff's action was barred by reason of the then two-year statute of limitations of section 13—214. The defendants argued that the plaintiff knew or should have known of its injury more than two years before it brought its action. Through affidavit, one of the plaintiff's former assistant administrators testified that he was aware of water

seepage in 1978. (170 Ill. App. 3d at 533.) Further, one of the architects testified that the plaintiff had complained of cracks in the masonry and investigated the complaints. In a letter to the plaintiff dated April 10, 1981, the architect concluded that the cracks were caused by "abnormally rapid expansion and contraction of the brick panels." 170 Ill. App. 3d at 534.

As in the case at bar, in *Freeport,* the plaintiff did not file any counterevidentiary material to respond to the defendant's motion to dismiss. (170 Ill. App. 3d at 534.) Thus, the trial court properly granted the defendants' motions to dismiss. See 170 Ill. App. 3d at 534.

Applying the *Freeport* case to this one, we find that the trial court's order dismissing Wil-Freds' third-party complaint against Ringbloom was proper. With no evidence to the contrary in its responses to the motion to dismiss, the only conclusion available is that Wil-Freds knew or should have known of an actionable defect in 1978.

The order of March 20, 1989, of the circuit court of Du Page County is affirmed, and the appeal from the order of June 6, 1990, is dismissed.

Affirmed in part; dismissed in part.

NICKELS and DUNN, JJ., concur.