(No. 89006.—

MILTON GUZMAN *et al.*, Appellees, v. C.R. EPPER-SON CONSTRUCTION, INC., Appellee (MJE Construction, Inc., *et al.*, Appellants).

*Opinion filed June 21, 2001.*

HARRISON, C.J., joined by THOMAS, J., specially concurring.

Karen L. Kendall and Rex K. Linder, of Heyl, Royster, Voelker & Allen, of Peoria, for appellant MJE Construction, Inc.

Richard G. Fehrenbacher, of Fehrenbacher & Fehrenbacher, of Wyoming, for appellant Michael Hadden, d/b/a Hadden Concrete.

Brenda H. Simkins, of Hartweg, Mueller, Turner & Woods, P.C., of Bloomington, for appellant Hardesty Heating & Ventilating, Inc.

Thomas M. Shields, of Lexington, for appellant Robert Georgi, d/b/a G&G Roofing.

Brian P. Thielen and Barbara E. Snow, of Thielen Law Offices, of Bloomington, for appellee C.R. Epperson Construction, Inc.

JUSTICE FREEMAN delivered the opinion of the court:

We granted leave to appeal in this case (177 Ill. 2d R. 315(a)) in order to determine whether the third-party complaint in this action was filed within the time prescribed by law. The circuit court concluded that it was not and dismissed the third-party action. The appellate court reversed. 309 Ill. App. 3d 655. For the reasons that follow, we vacate the judgment of the appellate court, reverse the judgment of the circuit court, and remand the matter to the circuit court.

## BACKGROUND

On September 25, 1992, plaintiffs in the underlying action, Milton and Donna Guzman (the Guzmans) filed their original complaint which named C.R. Epperson Construction, Inc. (Epperson), as the defendant. The Guzmans alleged that, in 1988, they entered into a contract with Epperson for the construction of a house in Bloomington, Illinois. They further alleged that Epperson breached the contract by constructing a home that contained numerous design and construction defects. The Guzmans voluntarily dismissed the suit on March 28, 1996, and refiled a new action on April 12, 1996. In the refiled pleading, the Guzmans alleged both breach of contract and breach of implied warranty of habitability

stemming from damages caused by, *inter alia*, defects in the installation of the house's windows, roof, plumbing, flooring, and walls.

On September 4, 1996, Epperson filed its third-party complaint against MJE Construction, Inc. (MJE), Michael Hadden, then doing business as Hadden Concrete, Holland Brothers, Inc., Hardesty Heating and Ventilating, Inc. (Hardesty), and Robert Georgi, doing business as G&G Roofing (Georgi).[1] Epperson alleged that it entered into subcontracts with each of the third-party defendants under which the third-party defendants agreed to perform various aspects of the construction of the Guzman home. The third-party complaint sounded in breach of contract and detailed the construction defects for which each subcontractor was allegedly responsible, alleging that the residence had flooded and leaked repeatedly in 1989, 1990, and subsequent years during periods of heavy rainfall.

On February 10, 1997, Epperson amended its complaint to include express and implied indemnity claims against each third-party defendant. Epperson demanded a jury trial on all counts. Thereafter, third-party defendant Georgi sought dismissal on the grounds that the third-party action was time-barred under section 13—214 of the Code of the Civil Procedure. In support of the motion, Georgi attached a letter, dated August 15, 1996, that Epperson wrote to Georgi. The letter reads, in pertinent part, as follows:

> "It is with great regret that this letter is written. In 1988, Epperson Construction built a house for Milton and Donna Guzman ***. Since that time, the owners have alleged that some of the work on the house was not quality work or done in a workmanlike manner. They have also alleged that some of the materials used in the construction were

---

[1]Holland Brothers, Inc., was later voluntarily dismissed from the suit by Epperson.

not 'new' materials. Many of the alleged 'defects' are nothing more than homeowner maintenance items.

We have tried to resolve these issues since 1990, but the owners refuse to cooperate. We have offered to do any and all work to take care of issues that relate to building the house (not maintenance) or a monetary settlement. These efforts were to no avail. The Guzman's [*sic*] have sued our company.

Some of the issues in the lawsuit relate to work done by your company. We have no alternative but to involve your company in the resolution of this matter. Hopefully, you understand that this was the last resort. We hope that all of the parties involved will combine forces to work together to dispel this frivolous lawsuit."

According to Georgi, the letter established that Epperson had known about the various problems at the Guzman home at least by 1990. Georgi contended that section 13—214 provides a four-year statute of limitations for such actions and that Epperson's claim had expired in 1994, some two years before Epperson filed suit.

In response, Epperson argued that it had not suffered an "injury" until the Guzmans filed suit against it in April 1996 or, at the earliest, when the Guzmans originally sued Epperson in September 1992. Epperson also noted that section 13—204 of the Code applied to its indemnity claims. Section 13—204, which was amended in 1994 and took effect on January 1, 1995, provides that no action for contribution or indemnity "may be commenced more than 2 years after the party seeking contribution or indemnity has been served with process in the underlying action or more than 2 years from the time the party *** knew or should reasonably have known of an act or omission giving rise to the action for contribution or indemnity, whichever period expires *later*." (Emphasis added.) 735 ILCS 5/13—204(b) (West 1996).

The circuit court granted Georgi's motion, finding that the Epperson letter established that Epperson knew

of the Guzmans' complaints of construction defects by no later than 1990. The court ruled that the four-year statute of limitations contained in section 13—214, therefore, began to run in 1990 and expired in 1994. Because Epperson did not file its third-party action until 1996, the court concluded that the action was time-barred. The circuit court further found that section 13—204, as amended, did not apply to the action because section 13—214 had previously applied to the action and that section 13—214's four-year limitation period for these claims had expired prior to the effective date of the amendment.

After Georgi successfully obtained dismissal of Epperson's claims on the basis of the statute of limitations, both Hardesty and Hadden moved, pursuant to section 2—619(a)(5), to dismiss Epperson's claims against them on the same grounds. Each supported its motion with a letter from Epperson that was essentially identical to that received by Georgi. MJE, thereafter, moved for summary judgment (see 735 ILCS 5/2—1005 (West 1996)) for similar reasons and, likewise, supported its motion with the same letter. Like the Georgi letter, each of these three letters is dated August 15, 1996. The circuit court dismissed Epperson's third-party claims against Hadden and Hardesty and granted summary judgment to MJE. In so ruling, the circuit court found no just cause for delaying enforcement or appeal of all of the orders (see 155 Ill. 2d R. 304(a)).

As noted previously, the appellate court reversed the dismissal orders of the circuit court. The appellate court held that section 13—214 had no applicability to Epperson's third-party action. The court, instead, found that "no particular statute of limitations specifically applied to these claims before section 13—204 was amended." 309 Ill. App. 3d 655, 660. For that reason, the court held that section 13—204 was applicable to the claims. 309 Ill.

App. 3d at 660-61. As such, the court concluded that the third-party complaint was timely filed pursuant to section 13—204. 309 Ill. App. 3d at 661.

## ANALYSIS

The matter comes to this court upon the circuit court's granting of (i) three motions to dismiss pursuant to section 2—619(a)(5) and (ii) one motion for summary judgment pursuant to section 2—1005. An appeal from a section 2—619 dismissal is the same in nature as one following a grant of summary judgment; both are matters given to *de novo* review. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993). In such cases, the reviewing court must determine whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law. *Hodge*, 156 Ill. 2d at 116.[2]

We begin our analysis by first noting that the appellate court erred in holding that no particular statute of limitations applied to Epperson's claims before 1995. At the time the Guzmans filed their original underlying complaint against Epperson in 1992, Illinois courts had held that the statute of limitations set out in section 13—214 applied to third-party actions for indemnification which are filed in cases covered by that section of the Code of Civil Procedure. See *Hartford Fire Insurance Co. v. Architectural Management, Inc.*, 158 Ill. App. 3d 515, (1987); *La Salle National Bank v. Edward M. Cohon & Associates, Ltd.*, 177 Ill. App. 3d 464 (1988); *Board of Library Directors v. Skidmore, Owings & Merrill*, 215 Ill.

---

[2]We are aware that there exist certain, subtle differences between motions for summary judgment and motions for dismissal predicated upon section 2—619. See 4 R. Michael, Illinois Practice §§ 38.3, 41.2 (1989). These differences play no role in the case at bar.

App. 3d 69 (1991). Section 13—214(a) states in pertinent part that

> "Actions based upon tort, contract or otherwise against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property shall be commenced within 4 years from the time the person bringing an action, or his or her privity, knew or should reasonably have known of such act or omission." 735 ILCS 5/13—214(a) (West 1992).

Although there was a consensus of opinion as to which statute of limitations controlled the third-party construction actions, the courts were split as to when the four-year limitation period was triggered. Some courts held the view that, because of the nature of derivative liability, the trigger date had to be when the third-party plaintiff became aware of the potentiality for liability in the underlying action, *i.e.*, the date of the filing of the underlying complaint (see *Hartford*, 158 Ill. App. 3d at 520-21) or the date of service of the underlying complaint (see *La Salle*, 177 Ill. App. 3d at 471). Other courts, however, questioned whether the statute of limitations is triggered automatically by the filing of the underlying complaint. In *Elsa Benson, Inc. v. Kalman Floor Co.*, 191 Ill. App. 3d 1016 (1989), the appellate court concluded that the running of the statute of limitations commences when the injured person becomes " 'possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved.' " *Benson*, 191 Ill. App. 3d at 1022, quoting *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 416 (1981). Likewise, the appellate court in *Board of Library Directors v. Skidmore, Owings & Merrill*, 215 Ill. App. 3d 69 (1991), held that the third-party plaintiff had four years from the date of learning of the defects in the construction. In that case, the underlying complaint had been

filed in 1984, and the third-party complaint was filed in 1988. The appellate court held, however, that the third-party plaintiff knew or reasonably should have known as early as 1978 of the construction defects and, therefore, pursuant to section 13—214, should have filed suit within four years of the discovery, *i.e.*, 1982.

MJE, Hardesty, Hadden, and Georgi (collectively, the subcontractors) rely on cases such as *Skidmore* for the proposition that it is the date of the discovery of the wrongful act or omission which triggers the statute of limitations. They note that Epperson's letter demonstrates that Epperson knew of the defects in the construction of the Guzman home as early as 1990 and that Epperson should have filed suit against them within four years of that discovery. Epperson counters that the result of such a rule would be that a third-party claim can expire at or prior to the time the underlying plaintiff files suit, thus denying a defendant an opportunity to pursue third-party claims against those who are responsible for the plaintiff's claimed losses.

Although the subcontractors' arguments are not without some appeal, we believe that they must be rejected due to the nature of third-party actions. A third-party action is a procedural device by which a defendant may assert a cause of action against a party that was not joined in the original action. See 3 R. Michael, Illinois Practice § 25.5 (1989). Such actions require that the party seeking relief assert a claim of derivative liability; therefore, the majority of third-party complaints are based on claims for indemnification or contribution. See 3 R. Michael, Illinois Practice § 25.5 (1989). As our appellate court has aptly noted in *Anixter Brothers, Inc. v. Central Steel & Wire Co.*, 123 Ill. App. 3d 947, 953 (1984):

> "Under Illinois law, a defendant entitled to bring an implied contract of indemnity action has a choice of filing a third-party complaint against a party who may be liable to indemnify him as part of the original action (Ill. Rev. Stat.

1983, ch. 110, par. 2—406(b)), or of waiting until the original action is over and filing a separate action for indemnity if he is found liable. In effect, Illinois law allows the third-party indemnity claim to be filed before it accrues, in order to promote settlement of all claims in one action. The third-party claim cannot be determined, however, before the underlying claim establishing liability and damages is determined. It follows that the cause of action for an implied contract of indemnity does not accrue until the defendant has a judgment entered against him or until he settles the claim made against him. Only at that point does the cause of action for indemnity accrue and the statute of limitations begin to run."

If we were to adopt the rationale of *Skidmore*, we would potentially be requiring that third-party actions be filed before the underlying complaint was even filed. Indeed, that is precisely what the court in *Skidmore* held—that the third party complaint should have been filed before the underlying action was even brought. This approach has been criticized. As the appellate court noted in the present case, the rationale would compel parties who might need third-party relief to file "numerous anticipatory claims well before they are sued, even if such litigation might later be unnecessary because the original plaintiff does not sue." 309 Ill. App. 3d at 660. See also *Washington Courte Condominium Ass'n-Four v. Washington-Golf Corp.*, 267 Ill. App. 3d 790, 848 (1994) (Buckley, J., concurring in part & dissenting in part). We agree with these observations. The purpose behind a statute of limitations is to prevent stale claims, not to preclude claims before they are ripe for adjudication. Because the analysis utilized in cases such as *Skidmore* has the potential to require third-party actions to be filed before the underlying complaint was even filed, we do not find it persuasive. Instead, we believe that the better reasoning was that espoused by the court in *La Salle*, which held that the statute of limitations in such cases

begins to run on the date the third-party plaintiff is served with the underlying action.

Our determination in this matter is further strengthened by the General Assembly's amendment to section 13—204. Prior to January 1, 1995, section 13—204 applied only to claims for contribution, not claims for indemnity. The legislature amended the statute (Pub. Act 88—538, eff. January 1, 1995) to include indemnity claims within its purview. The section provides that

> "(b) In instances where an underlying action has been filed by a claimant, no action for contribution or indemnity may be commenced more than 2 years after the party seeking contribution or indemnity has been served with process in the underlying action or more than 2 years from the time the party, or his or her privy, knew or should reasonably have known of an act or omission giving rise to the action for contribution or indemnity, *whichever period expires later.*

> (c) The applicable limitations period contained in subsection \*\*\* (b) shall apply to all actions for contribution or indemnity and shall preempt, as to contribution and indemnity actions only, all other statutes of limitation or repose, [including those applicable to the underlying action.]

> (d) The provisions of this Section, as amended by Public Act 88—538, shall be applied retroactively when substantively applicable, including all pending actions without regard to when the cause of action accrued; provided, however, that this amendatory Act of 1994 shall not operate to affect statutory limitations or repose rights of any party which have fully vested prior to its effective date."

(Emphasis added.) See 735 ILCS 5/13—204 (West 1996). The amendment provisions indicate that the trigger date for filing a third party action is the date of service or of knowledge of the wrongful action or omission, whichever is later. The amendment therefore prevents a third-party action from being time-barred before the underlying action has been filed.

In this case, Epperson was served with the underly-

ing action on October 9, 1992. Under section 13—214, Epperson had until October 9, 1996, to file its third-party action. Before that could occur, however, the General Assembly amended section 13—204 to include indemnity actions such as that involved here. As noted above, section 13—204 is to be applied retroactively, regardless of whether the action accrued before or after the effective date of the amendment and regardless of whether suit had been instituted or not. "Where a limitation period has not expired prior to amendment, the amendatory act controls all actions and remedies not previously barred." *Arnold Engineering, Inc. v. Industrial Comm'n*, 72 Ill. 2d 161, 165 (1978). Thus, under the amendment, Epperson should have filed suit two years after being served with the Guzmans' original complaint, *i.e.*, October 8, 1994. This court has held, however, that an amendment shortening a statute of limitations will not be applied retroactively so as to terminate a cause of action unless the party has had a reasonable period of time after the amendment's effective date in which to file an action. *Phillips Products Co. v. Industrial Comm'n*, 94 Ill. 2d 200, 203-04 (1983). This judicial rule of construction applies even in those instances in which the legislature has expressed an intent that the limitations period be applied retroactively. *Phillips*, 94 Ill. 2d at 204.

In light of the above, it must be determined whether Epperson had a reasonable period of time, after the amendment of section 13—204, in which to file its action against the subcontractors. In this case, Epperson had no time to file the claim after the amendment went into effect because the amendment served to instantaneously bar Epperson's action. Thus, the reasonableness inquiry turns upon Epperson's conduct after the effective date of the amendment. The record reveals that Epperson filed its third-party action within 19 months of the effective date of the amendment. In our estimation, Epperson's

conduct was reasonable in light of all of the facts evinced in the record. For that reason, the circuit court improperly granted the motions to dismiss and the motion for summary judgment based on the statute of limitations.

## CONCLUSION

In light of the foregoing, the judgment of the appellate court is vacated, the judgment of the circuit court is reversed, and the matter is remanded to the circuit court for proceedings consistent with this opinion.

*Appellate court judgment vacated;*
*circuit court judgment reversed;*
*cause remanded.*

CHIEF JUSTICE HARRISON, specially concurring:

I agree that Epperson's third-party claims are not untimely under section 13—204 of the Code of Civil Procedure, as amended in 1995, and that the judgment of the circuit court dismissing those claims based on the statute of limitations should therefore be reversed. I write separately because I do not believe that this conclusion is dependent on whether Epperson acted seasonably in asserting its claims following the statute's amendment.

Section 13—204 of the Code of Civil Procedure, as amended in 1995, required Epperson to assert its indemnity claims within two years of when it was served with process in the underlying action. In applying this requirement, the majority takes as the service date the date on which Epperson was served in the original proceeding. The problem with my colleagues' approach is that it fails to give effect to the Guzmans' decision to dismiss the original proceeding and to refile later.

Had Epperson advanced its indemnity claims in the original action prior to its dismissal, the third-party defendants could have challenged the timeliness of those claims, and the reasonableness inquiry called for by my

colleagues would have been appropriate. If the court determined that Epperson had not acted reasonably in filing its third-party claims following the amendment of section 13—204, it could then have dismissed those claims as time-barred. The entry of such an order prior to the Guzmans' voluntary dismissal of the underlying action on March 28, 1996, would have precluded Epperson from asserting indemnity claims in the Guzmans' subsequently refiled action. The indemnity claims would be barred under principles of *res judicata*. See *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 336 (1996); *Avery v. Auto-Pro, Inc.*, 313 Ill. App. 3d 747, 750-51 (2000).

As my colleagues' recitation of the facts indicates, that did not happen. When the Guzmans voluntarily dismissed their original complaint in March of 1996, Epperson had not yet asserted its indemnity claims. The circuit court therefore had no occasion to rule on the timeliness of those claims before allowing the Guzmans to take their voluntary dismissal without prejudice. Because the court made no such ruling, there was nothing to bar Epperson from asserting its indemnity claims when the Guzmans refiled their action.

Whether or not Epperson delayed too long in asserting its indemnity claims in the original proceeding, that delay cannot be transferred to the second action. The refiled complaint was not a continuation or reinstatement of the prior action. It commenced an entirely new and separate proceeding. *Dubina v. Mesirow Realty Development, Inc.*, 178 Ill. 2d 496, 504 (1997). Whatever obligation Epperson had to assert its indemnity claims in the first proceeding ended when that proceeding ended. Dismissal of the underlying complaint eliminated Epperson's potential liability, and without the prospect of liability, it had no grounds for seeking indemnification. Any claim it might have asserted for indemnification up to that point became moot.

Epperson had no need to seek indemnity again until the Guzmans refiled their cause of action on April 12, 1996. It was that refiled action, not the preceding one, against which the timeliness of Epperson's indemnity claims must be measured. Under a straightforward reading of section 13—204, Epperson had two years from the date on which it was served with process in the new underlying action to assert those indemnity claims. The company waited less than six months. Its indemnity claims were therefore timely. Based on these considerations, rather than for the reasons set forth by the majority, I agree that we should reverse the judgment of the circuit court and remand the cause for further proceedings.

JUSTICE THOMAS joins in this special concurrence.